WILLIAM SKRAINKA, Respondent, v. DIETTRICH SCHAR-RINGHAUSEN, Appellant.

April 6, 1880.

1. Restraints upon trade imposed by agreement, under limitations as to time, persons, and locality, are not necessarily restraints of trade in the sense which renders the contract void.

2. In such cases the essential question is one of monopoly and of injury to the public.

3. The jurisdiction of a justice is not confined to the district for which he was elected, and on appeal it is not necessary that the papers should show that his court was held within such district.

APPEAL from the St. Louis Circuit Court.
*Affirmed*.

LOUIS A. STEBER and JOHN McGAFFEY, for the appellant: Agreements or combinations, the effect of which is to pre-

vent or withdraw competition, are held to be against the policy of the law, and void.— *Wiggins Ferry Co.* v. *Railroad Co.*, 5 Mo. App. 373 ; *Morris Coal Co.* v. *Coal Co.*, 68 Pa. St. 174 ; *Crawford* v. *Wick*, 18 Ohio St. 190 ; *Doolin* v. *Ward*, 6 Johns. 194 ; *Stanton* v. *Allen*, 5 Denio, 434. Such combinations are contrary to public policy, and cannot be enforced in a court of justice. — *India Assn.* v. *Kock*, 14 La. An. 168 ; *Arnot* v. *Coal Co.*, 68 N. Y. 558. The law refuses its sanction to this contract, and a violation of it can create no cause of action.—*Peltz* v. *Long*, 40 Mo. 537 ; *Croft* v. *McConoughy*, 79 Ill. 346 ; *Guernsey* v. *Cook*, 120 Mass. 502. A justice of the peace must keep his office and hold his court in the district for which he was elected.—Wag. Stats. 803, sects. 4, 5. And this fact must be shown.—*Allen* v. *Scharringhausen*, 8 Mo. App. 229 ; *Bast* v. *Ketchum*, 5 Mo. App. 433 ; *Gibson* v. *Vaughan*, 61 Mo. 420 ; *Schultheis* v. *Nan*, 4 Mo. App. 592 ; *Barrett* v. *Railroad Co.*, 68 Mo. 65 ; *Cole* v. *Cole*, 3 Mo. App. 571.

R. E. ROMBAUER, for the respondent : Contracts which are limited to time, place, and persons, though in restraint of trade, are not necessarily void. — *Stearns* v. *Barrett*, 1 Pick. 443 ; *Pierce* v. *Woodward*, 6 Pick. 206 ; *Nobles* v. *Bates*, 7 Cow. 307 ; *Palmer* v. *Stebbins*, 3 Pick. 188 ; *Beard* v. *Dennis*, 6 Ind. 200 ; *Wintz* v. *Vogt*, 3 La. An. 16 ; *Presbury* v. *Fisher*, 18 Mo. 50 ; *Long* v. *Towl*, 42 Mo. 549.

BAKEWELL, J., delivered the opinion of the court.

On March 19, 1878, defendant, with twenty-three other persons, owners and operators of stone-quarries in that part of the city of St. Louis lying south of Market Street and Manchester Road, signed an agreement, in which they set forth that the great competition then existing had had the tendency of depressing the price of building-rock in the city so as to make it impossible to work quarries at a profit in certain parts of the city ; and that, it being desirable to agree on a plan which will secure a fair, proportionate sale

of the produce of all quarries at uniform prices and living rates, they mutually bind themselves as follows: 1. That none of the subscribers will, for a period of six months from date, sell any rubble building-stone, the produce of any quarry in St. Louis south of the line named above, except as set forth in the agreement. 2. An exclusive agent is appointed for the period named, to sell on account of the contracting parties all the rubble building-stone of said quarries, giving to each quarry its proportionate share, taking into consideration its location and producing capacity; and the agent is instructed, until otherwise directed by the committee afterwards named, to sell the rock at prices set out in the instrument for various qualities of stone. 3. An executive supervisory committee of five is appointed to see that the agent deals fairly with each quarry, to modify the scale of prices, and to hear and settle complaints. 4. The sum of $100 is fixed as liquidated damages for each violation of the agreement; and each sale of one hundred perches, or less, of rock is to be held as a separate offence. Skrainka, the plaintiff in this case, is appointed trustee to sue for the damages, and to distribute the amount recovered amongst the parties to the agreement, excluding the offending member. A percentage on sales is to be paid to the treasurer for the expenses of the association. The agent is to keep a record of sales, and to measure the rock and collect for the member furnishing any stone sold; and if any mason or building-contractor fails to pay for stone purchased within fifteen days from presentation of his bill, no more is to be furnished him. A percentage on sales is fixed as a compensation for the agent, and it is provided that he shall give security for the discharge of his duties.

Defendant was sued before a justice for $100 damages for violation of the agreement. On trial anew in the Circuit Court, there was judgment for plaintiff.

There is no dispute as to the facts. Appellant contends that the agreement was against public policy, in restraint of

trade, and not enforceable at law. This agreement does not, upon its face, purport to be in restraint of trade, nor does it appear that such must necessarily be its operation. The recital is, rather, that it is to advance trade ; because, if competition reaches such a point that goods cannot be sold at living prices, many manufacturers must be driven out of business. But not every agreement in restraint of trade is illegal. Where the contract injures the parties making it, by diminishing their means for supporting their families, tends to deprive the public of the services of useful men, discourages industry, diminishes production, prevents competition, enhances prices, and, being made by large companies or corporations, excludes rivalry and engrosses the markets, — tends to " make a corner," to use the slang of the stock and provision gamblers, — it is against the policy of the law. But restraints upon trade imposed by agreement, under limitations as to locality, time, and persons, are not necessarily restraints of trade in the general sense which is objectionable. *Alger* v. *Thatcher*, 19 Pick. 51.

The old doctrine of the common law, that contracts in restraint of trade are void, is no longer to be rigorously insisted upon precisely as it was insisted upon in the earlier cases in which it was announced. It has been modified by the more recent decisions, as the laws of trade have become better understood during the development of our commercial system and the changes which have been introduced in the social system. *Presbury* v. *Fisher*, 18 Mo. 50 ; *Long* v. *Towl*, 42 Mo. 545. It is not that contracts in restraint of trade are any more legal or enforceable now than they were at any former period, but that the courts look differently at the question as to what is a restraint of trade. When the avenues to trade and employment were impeded by artificial barriers, so that if one engaged not to practise his craft, no other occupation was free to him, and he was likely to remain an idle and useless, and to become a dangerous member of society, the court looked with grave displeasure

upon any agreement by which one bound himself not to exercise his trade or mystery (to use the old phrase) ; but with greater freedom there came an opinion that such contracts were not necessarily in restraint of trade or an injury to the public.

But, so far as the odious nature of monopoly is concerned, that, as observed in *Wiggins Ferry Company* v. *Railroad Company*, 5 Mo. App. 373, has become more apparent as commerce has increased. The danger to be apprehended from the accumulation of wealth and power in the hands of great corporations, and the abuses by which large capitalists may so combine as to relax or destroy competition in trade, are matters of public concern, and the essential question is one of monopoly and of injury to the public. Where the grain-dealers of a whole town formed a secret combination to stifle all competition, and thus to control and keep up the price of grain : that was held void. *Croft* v. *McConoughy*, 79 Ill. 346. And so, where five wealthy incorporated companies combined to divide among themselves the coal region of two States, and it appeared in evidence that they represented the entire body of bituminous coal in the northern region of a great State, and they entered into an agreement amongst themselves and with the shippers of anthracite coal, by which the supply could be reduced below the demand, so as to create a famine and enhance the price of coal, and the restraint upon trade not only embraced New York and Pennsylvania, but affected the Western States, this cruel and grasping conspiracy was held to be illegal and the contract void. *Morris Coal Co.* v. *Coal Co.*, 68 Pa. St. 173. The contract declared void in *Arnot* v. *Coal Company*, 68 N. Y. 558, was of a similar character, and by its terms bound the producers to keep their supply of coal out of the market. So, an association among all the proprietors of boats on the great canals of New York and Pennsylvania to keep up the price of freight and divide the profits has been held void. *Stanton* v. *Allen*, 5 Denio,

435. And these cases are good illustrations of the doctrine that a general restraint upon trade is void on the ground of public policy, as being injurious to the public interest. But where the restraint is partial and the restriction reasonable, and such as affords a fair protection to those in whose favor it is made, and it is not so large as to interfere with the interests of the general public, it need not be against the policy of the law.

The partial nature of the restraint in the case before us seems to be not colorable, but real. The agreement is amongst the quarrymen of one district of one city, and it does not appear that it embraces all of them. There is no evidence that it works any public mischief, and the contract is not of such a nature that it is apparent from its terms that it tends to deprive men of employment, unduly raise prices, cause a monopoly, or put an end to competition. It is limited both as to time and place; and we know of no case in recent times in which a contract such as the one before us has been declared illegal. In *Hilton* v. *Eckersley*, 6 El. & Bl. 47, an agreement by which all the master-manufacturers in a large district, embracing two populous towns in England, were obliged for a year to carry on their trade as the majority might direct, and might be compelled to shut up their manufactories and dismiss their hands, even though that action should be against the interests of individual members of the association and of the manufacturing community, was held void notwithstanding the limitation. But the result seems to be reached with hesitation, and there is a strong dissenting opinion in the case.

We are of opinion that the agreement in the present case is not one which clearly, upon its face, is mischievous, and which ought to be declared void, with a view to protecting individuals or the general public.

Appellant contends that, inasmuch as it does not appear on the face of the papers that the justice from whose judgment in this case the appeal was taken to the Circuit Court

was holding his court within the district for which he was elected, the necessary jurisdictional facts do not appear. Although the act of 1870 provides that the justices of St. Louis shall keep their offices and hold their courts within the district for which they were elected, this fact need not appear upon the face of the proceedings. The jurisdiction of a justice is not confined to the district within which his court is held. There is nothing whatever in this objection, which seems to have originated in a misapprehension of what has been said in cases originating under the Landlord and Tenant Act, where a justice has jurisdiction only when he is a justice of the district in which the property is situated, or of an adjoining district.

The judgment is affirmed. Judge HAYDEN concurs; Judge LEWIS is absent.