16:35 LRA 3.

[No. 15991. In Bank.—November 7, 1896.]

ALBERT HERRIMAN ET AL., RESPONDENTS, v. STUART MENZIES ET AL., APPELLANTS.

ASSOCIATION OF STEVEDORES —VALIDITY OF CONTRACT — RESTRAINT OF TRADE—MONOPOLY.—A contract which provides for the formation of an association between several firms and individuals engaged in the business of stevedoring in the city of San Francisco, under the name of the Master Stevedore's Association, to govern and control the business of master stevedores, to be carried on by its members, and to divide the profits and losses of the business so carried on, for a period of years, and to fix a schedule of prices or charges for any and all work as stevedores to be done by its members, who are each required to conform to such schedule, and to render statements of the business done by each at stated intervals, and to pay a certain sum as liquidated damages for violating any provision of the contract, is not void as being in restraint of trade, nor as in effect creating a monopoly, there being nothing to show that the parties to the contract by the combination of their business interests are in the control of that business in San Francisco to an extent to enable them to exclude competition therein, or control the price of such labor or business.

ID.—DEFINITION OF MONOPOLY.—A monopoly exists where all or nearly all of an article of trade or commerce within a community or district is brought within the hands of one man or set of men, so as to practically bring the handling or production of the commodity or thing within such single control, to the exclusion of competition or free traffic therein, and anything else than this is not a monopoly.

ID.— CONTRACT FOR MONOPOLY, WHEN UNLAWFUL. — An agreement, the purpose or effect of which is to create a monopoly, is unlawful, if it relate to some staple commodity or thing of general requirement or necessity, and not something of mere luxury or convenience.

ID.—VALIDITY OF REASONABLE COMBINATIONS TO REGULATE PRICES.— Combinations between individuals or firms for the regulation of prices and of competition in business are not monopolies, and are not unlaw-

ful as in restraint of trade, so long as they are reasonable, and do not include all of a commodity or trade, or create such restrictions as materially affect the freedom of commerce.

ID.—POWER TO CONTRACT—INVALIDITY NOT TO BE INFERRED.—Parties are to be given the widest latitude to make contracts with reference to their private interests, and the invalidity of such contracts is never to be inferred, but must be clearly made to appear, and the court is not at liberty to indulge in inferences which restrict the parties in their right to combine their interests.

ID.—PARTIAL RESTRAINT OF TRADE—TENDENCY OF COURTS.—The tendency of the courts is to regard contracts in partial restraint of trade with less disfavor than formerly.

NEW TRIAL—APPEAL FROM ORDER—PARTIES—SERVICE OF NOTICE — DIS-. MISSAL.—Upon an appeal from an order denying a new trial, only the parties to the motion upon which the order was made are necessary parties to the appeal, and the appeal cannot be dismissed for failure of the moving party to serve the notice of motion for a new trial upon one of the parties to the cause.

ID. —SERVICE OF NOTICE OF INTENTION—FAILURE TO SERVE ADVERSE: PARTY—JURISDICTION — AFFIRMANCE OF ORDER. — A notice of intention to move for a new trial must be served upon every party whose interest in the subject matter of the motion is adverse to, or will be affected by, the granting of the motion, or by changing the former decision of the court; and the failure of plaintiffs to serve such notice upon a defendant against whom a recovery was sought, and in whose favor judgment was rendered in an action for an accounting, against all of the defendants as parties, deprives the superior court of jurisdiction to grant the motion, and an order denying the same will be affirmed upon appeal.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.     JAMES M. TROUTT, Judge.

The facts are stated in the opinion of the court.

*Henry M. Clement,* for Appellants.

The contract between the master stevedores is intended to destroy competition, and is invalid and void. (*Hooker* v. *Vandewater,* 4 Denio, 349; 47 Am. Dec. 258; *Sayre* v. *Louisville etc. Assn.,* 1 Duvall, 143; 85 Am. Dec. 613; *Gibbs* v. *Smith,* 115 Mass. 592; 1 Wharton on Contracts, sec. 439; *Emery* v. *Ohio Candle Co.,* 47 Ohio St. 320; 21 Am. St. Rep. 819; *Texas etc. Ry. Co.* v. *Southern Pac. Ry. Co.,* 41 La. Ann. 970; 17 Am. St. Rep. 445; *Gibbs.* v. *Consolidated Gas Co.,* 130 U. S. 396; *Morris*

*Run Coal Co.* v. *Barclay Coal Co.,* 68 Pa. St. 173; 8 Am. Rep. 159; *Arnolt* v. *Pittston etc. Coal Co.,* 68 N. Y. 558; 23 Am. Rep. 190; *Craft* v. *McConoughy,* 79 Ill. 346; 22 Am. Rep. 171; *Santa Clara etc. Co.* v. *Hayes,* 76 Cal. 387; 9 Am. St. Rep. 211; *Pacific Factor Co.* v. *Adler,* 90 Cal. 117; 25 Am. St. Rep. 102; *Kreamer* v. *Earl,* 91 Cal. 112; *Vulcan Powder Co.* v. *Hercules Powder Co.,* 96 Cal. 510; 31 Am. St. Rep. 242; *Anderson* v. *Jett,* 89 Ky. 375; *Western Woodware Assn.* v. *Starkey,* 84 Mich. 76; 22 Am. St. Rep. 693; *Richardson* v. *Buhl,* 77 Mich. 632; *Horner* v. *Graves,* 7 Bing. 743.) The contract being illegal, no accounting can be had thereunder. (*Gregory* v. *Wilson,* 36 N. J. L. 315; 13 Am. Rep. 448; *Brooks* v. *Martin,* 2 Wall. 79; *Beard* v. *Beard,* 65 Cal. 356; *Mitchell* v. *Cline,* 84 Cal. 409; *Samuels* v. *Oliver,* 130 Ill. 85; *Pittsburg Carbon Co.* v. *McMillin,* 119 N. Y. 53; *Richardson* v. *Buhl, supra; Emery* v. *Ohio Candle Co., supra; Craft* v. *McConoughy, supra; People* v. *North River Sugar etc. Co.,* 7 N. Y. Sup. Ct. 406.) The defendant, who is himself a party to an illegal contract, may set up its illegality and avail himself of it as a defense. (*Smith* v *Hubbs,* 10 Me. 76–8, and authorities cited therein.)

*T. C. Coogan,* for Respondents.

The combination shown in this case is not a monopoly, since it does not include all stevedores; and it is not void as against public policy, but is a lawful contract. (Webster's Dictionary, tit. "Monopoly"; Bouvier's Law Dictionary, same title; Spelling on Trusts and Monopolies, sec. 133, p. 235; *Printing etc. Co.* v. *Sampson,* L. R. 19 Eq. 462; *Egerton* v. *Bronlaw,* 4 Hoffm. L. Cas. 1; *People* v. *Chicago,* 20 Ill. App. 473, 490–92; *Master Stevedores' Assn.* v. *Walk,* 2 Daly, 1, 13; *Dolph* v. *Troy Laundry etc. Co.,* 28 Fed. Rep. 553; *Collins* v. *Locke,* L. R. 4 App. Cas. 674; Ray's Constitutional Limitations, 223; *Skrainka* v. *Scharringhausen,* 8 Mo. App. 522; *Ontario* v. *Merchants,* 18 Grant U. C. 542, 544, 548, 549; *Gloucester etc. Co.* v. *Russia Cement Co.,* 154 Mass. 92; 26 Am. St. Rep. 214.) The contract being for a partnership, the

right to a dissolution and accounting followed. (Civ. Code, secs. 2412, 2450, 2452; *Cottle* v. *Leitch*, 35 Cal. 434.) The accounting was properly had, even assuming the contract to be illegal. (*Crescent Ins. Co.* v. *Bear*, 23 Fla. 50, 54, 55; 11 Am. St. Rep. 331; *Western Union Tel. Co.* v. *Burlington etc. Ry. Co.*, 11 Fed. Rep. 1, 6; *Brooks* v. *Martin*, 2 Wall. 70; *Gregory* v. *Wilson*, 36 N. J. L. 315; 13 Am. Rep. 448; *Tenant* v. *Elliott*, 1 Bos. & P. 3; *Farmer* v. *Russell*, 1 Bos. & P. 296; *Sharp* v. *Taylor*, 2 Phill. Ch. 801.)

VAN FLEET, J.—In this case the defendants appealed to this court from the judgment and from an order denying a motion for a new trial. The appeal from the judgment was heretofore dismissed, and the order denying a new trial affirmed in Department. (*Herriman* v. *Menzies, post,* p. 25.) Subsequently, the order dismissing the appeal from the judgment was, upon petition therefor, set aside, and a hearing of the motion ordered in Bank. Since the last order, the appeal from the judgment has been submitted upon the merits, but without a waiver of said motion to dismiss.

The appeal from the judgment involves but one question—whether the complaint states a cause of action? The objection urged is, that the contract which forms the basis of the action, and under which the accounting is asked, is contrary to public policy and void. The contract is set out in *hæc verba*. It provides for the formation of an association between several firms and individuals engaged in the business of stevedoring in the city of San Francisco, under the name of the Master Stevedores' Association, " to govern and control the business of master stevedores, to be carried on by its members, and to divide the profits and losses of said business so carried on." The association is to continue five years. Certain officers, consisting of president, vice-president, and secretary, whose duties are defined, and a standing committee for the auditing of accounts of the members, are provided for. The association is given

power through a majority vote of its members to "fix a schedule of prices or charges for any and all work, as stevedores, to be done and performed by its members, and they hereby agree that they will each of them observe and abide by such schedule of prices or charges, and that none of them will do or perform any such work at or for less or lower prices, or suffer or allow any discount to be made therefrom, except as may be allowed or authorized by the association.

" 9. Each of the firms and parties hereto is to carry on the business of master stevedores, according to the provisions of this agreement, in their own names as heretofore, for the benefit of this association; and each agree to do so in an efficient and economical manner, and that their disbursements shall be subject to examination and approval or disapproval as herein provided."

Each member is required to keep full and correct accounts of the business done by him, including all receipts and disbursements, and render statements thereof at stated intervals to the association. The agreement covers all business done by any of the members in San Francisco and the other ports in the state, and provides that any member violating any provision of the contract shall pay to the association a certain amount as liquidated damages.

It is contended that the contract contemplates an illegal scheme and combination to stifle competition in the stevedoring business, and is in restraint of trade, and that its effect is to create a monopoly; and that in these respects it contravenes public policy, and is opposed to good morals, and so constitutes no proper basis for an action either at law or in equity.

The objection that its effect is to create a monopoly in, and unduly restrict, the business of stevedoring does not find support in its terms. A monopoly exists where all, or so nearly all, of an article of trade or commerce within a community or district is brought within the hands of one man or set of men, as to practically bring the handling or production of the commodity or thing

within such single control to the exclusion of competition or free traffic therein. Anything less than this is not a monopoly. Webster defines it as "the *sole* power of dealing in any species of goods"; and Bouvier as "the abuse of free commerce, by which one or more individuals have procured the advantage of selling *all* of a particular kind of merchandise." And these definitions accord with that given by later writers. (Soelling on Trusts and Monopolies, sec. 133.)

An agreement, the purpose or effect of which is to create a monopoly, is unlawful, if it relate to some staple commodity, or thing of general requirement and use, or of necessity, and not something of mere luxury or convenience. Assuming that the business of stevedoring is a thing which is the proper subject of a monopoly within this definition, there is nothing in this agreement to render it obnoxious to that objection, nor anything to show that it will operate to unlawfully restrain trade. It nowhere appears therefrom that the parties to this contract, by the combination of their business interests provided for, are in the control, or anything like the control, of that business in San Francisco, to an extent to enable them to exclude competition therein, or control the price of such labor or business. There is absolutely nothing to show that they comprise more than the most insignificant part or fraction, either in number or volume of business, of those engaged in that trade in this community. We are not at liberty to indulge in inferences which would restrict the parties in their right to combine their interests. Parties are to be given the widest latitude to make contracts with reference to their private interests (*Printing etc. Co.* v. *Sampson*, L. R. 19 Eq. 465); and the invalidity of such contracts is never to be inferred, but must be clearly made to appear. Appellant says that the purpose of this contract is expressly declared as that of "controlling the business of stevedoring," and that this implies an improper restriction of that business and a monopoly. But the language of the contract is, " to govern and control the business of mas-

ter stevedores, *to be carried on by its members.*" This is
a very different thing from a combination to control the
entire business of stevedoring. Combinations between
individuals or firms for the regulation of prices, and of
competition in business, are not monopolies, and are
not unlawful as in restraint of trade, so long as they are
reasonable, and do not include all of a commodity or
trade, or create such restrictions as to materially affect
the freedom of commerce. Say the supreme court of
Illinois, in *People's Gas Light etc. Co.* v. *Chicago Gas Light
etc. Co.*, 20 Ill. App. 492: "The tendency of the courts is to
regard contracts in partial restraint of competition with
less disfavor than formerly, and the strictness of the
ancient rule has been greatly modified by the modern
cases. Maule, J., in *Proctor* v. *Sargent*, 2 Scott N. R.
289, remarked that: 'Many persons who are well in-
formed upon the subject entertain an opinion that the
public would be better served if, by permitting restric-
tions of this kind, encouragement were held out to in-
dividuals to embark large capitals in trade, and that it
would be expedient to allow parties to enter into any
description of contract for that purpose that they might
find convenient.' (Greenwood on Public Policy, 689,
and cases cited.)"

And in *Skrainka* v. *Scharringhausen*, 8 Mo. App. 522,
it is said: "The old doctrine of the common law that
contracts in restraint of trade are void, is no longer to
be rigorously insisted upon, precisely as it was insisted
upon in the earlier cases in which it was announced. It
has been modified by the more recent decisions, as the
laws of trade have become better understood during the
development of our commercial system, and the changes
which have been introduced in the social system. (*Pres-
bury* v. *Fisher*, 18 Mo. 50; *Long* v. *Towl*, 42 Mo. 545; 97
Am. Dec. 355.) It is not that contracts in restraint of
trade are any more legal or enforceable now than they
were at any former period, but that the courts look
differently at the question as to what is a restraint of
trade."

We find nothing in the terms of the present agreement which would necessarily work an unreasonable restriction in the manner of conducting the business in question, or which would necessarily interfere with the freedom or right of others not parties to the contract to engage in and carry on such business. The parties themselves, it is true, have combined their business as severally carried on by them, and have agreed to be bound by a schedule or rate of charges to be fixed by the association; but this in itself is not an unlawful restraint of trade so long as it does not appear that the rates to be charged are unreasonable, or the restriction such as to preclude a fair competition with others engaged in the business.

In *Collins* v. *Locke*, L. R. 4 App. Cas. 674, it is held that where the object of an agreement was to parcel out the stevedoring business of the port of Melbourne among the parties to it, and so prevent competition, at least among themselves, and reasonably keep up the price, it was not invalid, though its effect might be to create a partial restraint upon the power of the parties to exercise their trade.

In *Master Stevedores' Assn.* v. *Walsh*, 2 Daly, 1, where an agreement not materially unlike the present was entered into between master stevedores, fixing a rate of prices to be charged by the members in their business, and making a penalty for any member doing work for less, and an action was brought to enforce such penalty for a default by one of the members, it was held that such an association was not an unlawful combination as injurious to trade or commerce, nor the restrictions unlawful, as being in restraint of trade.

"An agreement between a number of persons to act concertedly in fixing prices at which they will sell a particular product in a particular city is not illegal, as being in restraint of trade, unless it appears that they have a monopoly of that product." (Ray's Contractual Limitations, 223, and cases there cited. See, also, *People's Gas Light Co.* v. *Chicago Gas Light Co., supra; Skrainka*

v. *Scharringhausen, supra; Ontario etc. Co.* v. *Merchants etc. Co.,* 18 Grant. U. C. 542; *Central Shade Roller Co.* v. *Cushman,* 143 Mass. 353.) In *Ontario* v. *Merchants, supra,* speaking of an agreement of similar import between salt manufacturers to keep up the price of that commodity, it is said: " I know of no rule of law ever having existed which prohibited a certain number (not all) of the producers of a staple commodity agreeing not to sell below a certain price—and nothing more than this has been agreed to by the parties here."

We find nothing necessarily inconsistent with the doctrine of these cases in the cases cited by appellants.

In the case of *Pacific Factor Co.* v. *Adler,* 90 Cal. 117, 25 Am. St. Rep. 102, the language relied upon has express reference to contracts " entered into with the object and view of *controlling and necessarily suppressing the supply,* and thereby enhancing the price of articles of actual necessity."

In *Mill etc. Co.* v. *Hayes,* 76 Cal. 387, 393; 9 Am. St. Rep. 211, in the language of the court: " The very essence and mainspring of the agreement—the illegal object—' was to form a combination among *all* the manufacturers of lumber at or near Felton, for the sole purpose of increasing the price of lumber, limiting the amount thereof to be manufactured, and give plaintiff *control of all lumber manufactured.'* "

In *Vulcan Powder Co.* v. *Hercules Powder Co.,* 96 Cal. 510, 31 Am. St. Rep. 242, the contract precluded the parties, absolutely, from shipping to or selling the commodity within a large part of the territory of the United States, and restricted the output of the powder within the territory wherein the parties were at liberty to sell; and it was held that the contract was void, as in restraint of trade. The cases from other states relied upon, are as clearly distinguishable from the present as are the foregoing.

After a careful review of all the authorities we are unable to say from the terms of the present contract that it, to any extent, trenches upon the rule of public pol-

icy invoked, or that there is anything within its provisions which should preclude the parties thereto from enforcing it.

This conclusion renders the motion to dismiss the appeal of no consequence.

The judgment is affirmed.

GAROUTTE, J., HARRISON, J., McFARLAND, J., TEMPLE, J., and HENSHAW, J., concurred.

The following is the opinion of Department One, rendered on the tenth day of April, on the appeal from the order denying a new trial.

THE COURT.—Plaintiffs move the court to dismiss the appeal upon the ground that the notice thereof was not served upon the defendant Emma J. Taylor, executrix of the last will of Theodore H. Allen, or upon A. Heyneman, her attorney; that she is a respondent herein, an adverse party to appellants, interested in the judgment, and will be affected by the result of the appeal, etc.

The motion is supported by the certificate of the clerk of the court below, and by affidavit showing that said defendant Emma J. Taylor appeared separately by said A Heyneman, Esq., as her attorney, and that the notice of appeal was not served upon her or upon her said attorney.

Defendants show by counter-affidavit that the separate answer of defendant Taylor was not served upon them or their attorney, and that the interests of the firm of Allen & Young were represented by Henry N. Clement, Esq., who was the attorney of all the defendants except Emma J. Taylor, and that said Taylor did not appear in the case except by answer.

Upon an appeal from an order denying a new trial, only the parties to the motion upon which the order was made are necessary parties to the appeal. (*Watson* v. *Sutro*, 77 Cal. 609; *Estate of Ryer*, 11 Cal. Dec. 15.) In the present case the plaintiffs did not serve their notice of intention to move for a new trial upon Mrs. Taylor,

nor was she a party to the proceedings in the superior court upon that motion. The appeal from the order denying a new trial, therefore, cannot be dismissed for failure to serve her with the notice of appeal.

Section 659 of the Code of Civil Procedure, however, requires that the party intending to move for a new trial shall "serve upon the adverse party a notice of his intention." The "adverse party" upon whom this notice is to be served, is determined by the same rules as is the "adverse party" upon whom a notice of appeal is to be served, viz., every party whose interest in the subject matter of the motion is adverse to or will be affected by the granting of the motion or changing the former decision of the court; and a failure to serve such adverse party with the notice of an intention to move for the new trial will be attended with the same consequences as a failure to serve an adverse party with a notice of appeal from the judgment. The superior court can have no jurisdiction to re-examine an issue of fact that it has tried, and change its decision thereon, unless all the parties to the issue and former decision are properly before it. In the present case the plaintiffs sought a recovery against Mrs. Taylor, and, upon the trial of the issues involving her liability, the court made certain findings of fact in her favor, and determined that she was under no liability to account for any moneys that she had received. The action is for an accounting by all of the defendants as partners in the enterprise, and it is evident that an adjustment of their several rights and obligations growing out of the partnership venture cannot be had unless all of the parties to the transactions are before the court. The effect of granting a new trial would be to vacate the former findings of fact, and compel Mrs. Taylor to again litigate a controversy which had been decided in her favor. A new trial of these issues cannot be had without affecting her interests, and, as she had not been brought before the superior court at the hearing of the motion for a new trial, that court had

no jurisdiction to grant the motion, and its order denying the same was properly made.

The order denying a new trial is affirmed.

Rehearing denied.