[Crim. No. 2203.   In Bank.—January 28, 1919.]

THE PEOPLE, Respondent, v. H. JEVNE COMPANY (a Corporation), et al., Appellants.

MONOPOLIES—CARTWRIGHT ANTI-TRUST ACT—COMBINATIONS PROHIBITED. The Cartwright Act (Stats. 1907, p. 984) subject to the provisos of the amendment of 1909 (Stats. 1909, p. 593) prohibits any combination of capital, skill, or acts by two or more persons for the purpose of increasing the price of any commodity, or fixing at any figure;

whereby its price to the consumer shall be controlled, any article intended for sale or consumption, or to make or carry out any agreements by which they shall bind themselves to keep the price of such article at a fixed or graduated figure.

ID.—Agreement Between Wholesale Bakers—Fixing Retail Price of Bread —Violation of Act.—An agreement between wholesale bakers, whereby they fixed the retail price of bread to be sold by them to retailers at fifteen cents per loaf, and agreed that they would not sell bread to any retailer who did not maintain such price, is violative of all or at least some of the prohibitions of the Cartwright Anti-trust Act.

ID.—Sufficiency of Indictment.—An indictment charging a violation of the provisions of the Cartwright Anti-trust Act is not defective in not alleging that the combination or agreement did not come within the permissive scope of the proviso added to section 1 of the act declaring that no agreement, combination, or association shall be deemed to be unlawful, the object and business of which are to conduct its operations at a reasonable profit, or to market at a reasonable profit those products which cannot otherwise be so marketed.

ID.—Proviso of 1909—Lawfulness of Agreement to Conduct Operations at Reasonable Profit—Effect of Amendment.—The proviso added to section 1 of the Cartwright Anti-trust Act by the amendment of 1909 declaring that no agreement, combination, or association shall be deemed to be unlawful "the object and business of which are to conduct its operations at a reasonable profit or to market at a reasonable profit those products which cannot otherwise be so marketed," does not go to the definition of the offense, but creates rather an exception, exempting from the operation of the general terms of the statute persons who have committed the prohibited acts for a specified purpose, and therefore, the existence of such purpose affords matter of excuse merely, and is to be relied on in defense.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Frederick W. Houser, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. R. Young and Goodwin & Morgrage, for Appellants.

U. S. Webb, Attorney-General, and Joseph L. Lewinsohn, Deputy Attorney-General, for Respondent.

SLOSS, J.—The defendants appeal from a judgment convicting them of a "conspiracy against trade," as defined by

the Statute of 1907, commonly known as the Cartwright Act. (Stats. 1907, p. 984; amended, Stats. 1909, p. 593.) They also appeal from an order denying their motion for a new trial.

Section 1 of'the act, as originally enacted, reads as follows:

"A trust is a combination of capital, skill or acts by two or more persons, firms, partnerships, corporations or associations of persons, or of any two or more of them for either, any or all of the following purposes:

"1. To create or carry out restrictions in trade or commerce.

"2. To limit or reduce the production, or increase or reduce the price of merchandise or of any commodity.

"3. To prevent competition in manufacturing, making, transportation, sale or purchase of merchandise, produce or any commodity.

"4. To fix at any standard or figure, whereby its price to the public or consumer shall be in any manner controlled or established, any article or commodity of merchandise, produce or commerce intended for sale, barter, use or consumption in this state.

"5. To make or enter into or execute or carry out any contracts, obligations or agreements of any kind or description, by which they shall bind or have bound themselves not to sell, dispose of or transport any article or any commodity or any article of trade, use, merchandise, commerce or consumption below a common standard figure, or fixed value, or by which they shall agree in any manner to keep the price of such article, commodity or transportation at a fixed or graduated figure, or by which they shall in any manner establish or settle the price of any article, commodity or transportation between them or themselves and others, so as to directly or indirectly preclude a free and unrestricted competition among themselves, or any purchasers or consumers in the sale or transportation of any such article or commodity, or by which they shall agree to pool, combine or directly or indirectly unite any interests that they may have connected with the sale or transportation of any such article or commodity, that its price might in any manner be affected. Every such trust as is defined herein is declared to be unlawful, against public policy and void."

The changes made by the amendment of 1909 included the addition to section 1 of the following:

"*Provided* that no agreement, combination or association shall be deemed to be unlawful or within the provisions of this act, the object and business of which are to conduct its operations at a reasonable profit or to market at a reasonable profit those products which cannot otherwise be so marketed."

The indictment was in three counts, by means of which the pleader undertook to set up different statements of the same offense. Briefly stated, the charge was that the defendants, who were severally engaged in the business of baking bread and selling the same at wholesale to retail dealers in the county of Los Angeles, made and entered into a trust, combination, and conspiracy with each other and with other persons, to fix the price at which retail bread dealers should sell twenty-four-ounce loaves of bread to consumers, such price being fixed at fifteen cents per loaf, and to require and force the retail dealers to whom bread was sold by them to sell to the public at a price of not less than fifteen cents for each twenty-four-ounce loaf; and that said defendants further agreed that they would refuse to sell any bread to any retail dealer who refused to maintain said price. The indictment sets forth the commission of various acts in furtherance of such agreement.

The present appeals were first heard in the district court of appeal for the second appellate district, and the judgment and order appealed from were there affirmed. An order was subsequently made transferring the cause to this court for hearing and determination.

In the argument before the court of appeal, counsel for the defendants directed their efforts, in large part, to an attack upon the constitutionality of the act under which the prosecution was had. That court gave full consideration to the points made in this regard, and answered them to such effect that the appellants, in seeking a hearing in this court, abandoned their former position and conceded the validity of the statute. We may therefore, omit any discussion of this question, which was one of the principal points of contention on the earlier presentation of the appeal.

It is also unnecessary, for the purposes of the present case, to follow counsel into another field of debate which is treated with some elaboration in the briefs. Much is there said regarding the proper construction of the act. But the act, how-

ever it be interpreted, does undoubtedly prohibit (subject, of course, to the provisos of the amendment of 1909) any combination of capital, skill, or acts by two or more persons for the purpose of increasing the price of any commodity (sec. 1, subd. 2), or fixing at any figure, whereby its price to the consumer shall be controlled, any article intended for sale or consumption (sec. 1, subd. 4), or to make or carry out any agreements by which they shall bind themselves to keep the price of such article at a fixed or graduated figure. (Sec. 1, subd. 5.) Nor will it be doubted that all, or, at least, some of these prohibitions are violated by an agreement between wholesale bakers, whereby they fix the retail price of bread to be sold by them to retailers at fifteen cents per loaf, and agree that they will not sell bread to any retailer who does not maintain such price. The making and carrying out of such a combination was clearly and directly charged in the indictment, and it is not claimed that there was a lack of evidence to support the accusation.

With the elimination of the questions to which we have referred, little remains to be considered, except the effect of the above quoted proviso added to section 1 by the amendment of 1909. That proviso declares that no agreement, combination, or association shall be deemed to be unlawful "the object and business of which are to conduct its operations at a reasonable profit or to market at a reasonable profit those products which cannot otherwise be so marketed."

The appellants contend that the indictment was defective, and that their demurrer thereto should have been sustained, for the want of an allegation that the combination or agreement set forth did not come within the permissive scope of this proviso. There is no uncertainty in the law governing the necessity of alleging, in an indictment or information, that the accused does not come within exceptions or provisos contained in the statute authorizing the prosecution. As is frequently the case, the difficulty lies rather in the application than in the enunciation of the rule. The question was carefully considered, and clearly expounded, in *Ex parte Hornef*, 154 Cal. 355, [97 Pac. 891]. It was there said: "Such exceptions and provisos are to be negatived in the pleading only where they are descriptive of the offense or define it, and where they afford matter of excuse merely, they are to be relied on in defense." Hornef had been prose-

CLXXIX Cal.—40

cuted for practicing dentistry without the license required by
the act of 1901. (Stats. 1901, p. 564.) By a proviso in sec-
tion 1 of that act it was declared that the requirement of a
license was not to apply to dentists who had the right to prac-
tice at the time of the passage of the act. The holding was
that it was not necessary to allege in the complaint that the
accused was not within the class so excepted. Similarly, it has
been held that an indictment for bigamy need not negative
the existence of facts making applicable a proviso that the
statute shall not extend to a person marrying without knowl-
edge that a former husband or wife, who has been absent
from the state for a given number of years, is still alive
(*State* v. *Abbey,* 29 Vt. 60, [67 Am. Dec. 754] ; *State* v. *Gal-
lagher,* 20 R. I. 266, [38 Atl. 655] ; *People* v. *Priestley,* 17 Cal.
App. 171, [118 Pac. 965] ) ; that an indictment for unlawful
sale of certain drugs need not negative an exception in favor
of druggists selling on a physician's prescription (*State* v. *Ah
Chew,* 16 Nev. 50, [40 Am. Rep. 488] ) ; and that it is not
necessary to exclude the exception in an accusation under a
statute making it an offense to engage in labor on Sunday,
with the proviso that the act shall not extend to those who
conscientiously observe the seventh day of the week as the
Sabbath. (*Billigheimer* v. *State,* 32 Ohio St. 435.) These
cases, and others of like purport, are cited and discussed in
*Ex parte Hornef, supra.* On the other hand, it is essential,
in a charge of rape, to allege that the female upon whom the
act was accomplished was not the wife of the perpetrator
(*People* v. *Miles,* 9 Cal. App. 312, [101 Pac. 525] ), or, in a
charge of the offense described in section 288 of the Penal
Code, to aver that the act was not one of those "constituting
other crimes provided for in part two of this code." (*People*
v. *Grinnell,* 9 Cal. App. 238, [98 Pac. 681].) In each of the
last two cases the exception manifestly formed a part of the
definition of the offense. Whether a particular accusation
falls within this class or that illustrated by *Ex parte Hornef*
is often a nice question. In the present instance, we agree
with the district court of appeal in the view that the proviso
under discussion does not go to the definition of the offense,
but that it creates rather an exception, exempting from the
operation of the general terms of the statute persons who have
committed the prohibited acts for a specified purpose. The

existence of such purpose affords, therefore, "matter of excuse merely," and is to be relied on in defense.

The appellants contend, further, that the evidence is insufficient to support the implied finding that the combination or agreement charged was not one of those excluded from the purview of the act by the proviso of 1909. This issue was presented to the jury under instructions directing them to return a verdict of not guilty if they should find that the combination or agreement charged had been made with one or the other of the objects specified in the amendment. The record shows that the defendants fixed a wholesale price of twelve cents per loaf. This left to the retailers, selling at fifteen cents, a profit of three cents per loaf, or twenty per cent of their selling price. Much evidence was presented by the defendants to show that this rate of profit is little, if at all, more than the actual expense of conducting the retail trade, and that the profit to the retailer could not, accordingly, have been an unreasonable one. If we assume, as the appellants contend, that the evidence on this point was without conflict, the showing still fails to meet the requirements of the case. It is to be remembered that the defendants are wholesale dealers in bread. They are charged with combining to fix, not the price which they, as such wholesalers, were to receive for their product, but that to be obtained from the ultimate consumer by the retailers to whom they sold. The proviso added to the statute authorizes an agreement or combination with the object of conducting its operations at a reasonable profit, or marketing certain products at a reasonable profit. This provision manifestly contemplates a profit sought by the persons entering into the combination, not the profit of their customers or vendees. As applied to the case at bar, the amendment goes no further than to authorize wholesale dealers in bread to combine for the purpose of realizing a reasonable profit in their own dealings. It does not assume to legalize a combination or agreement entered into by them with the object of securing a reasonable profit to the retailers who may buy from them. It may be that the maintenance of a fixed retail price will have a tendency to so stabilize trade conditions as to better enable the wholesalers to realize a fair profit on their own transactions. But if such an inference may be drawn, the evidence in this case does not compel it. It cannot be said that the testimony shows con-

clusively that the fixing of a retail price of fifteen cents per loaf was a necessary or proper step in accomplishing the purpose of securing a reasonable profit to the wholesalers as such.

There is no occasion to consider whether the evidence warrants the conclusion that the price of twelve cents, fixed by the defendants as the charge to be made by them to retailers, afforded any more than a reasonable profit on their wholesale transactions. As we have pointed out, the indictment was not based upon the fixing of a price at which they were to sell at wholesale, but upon the establishment of a retail price of fifteen cents to which their customers were to be compelled to conform. It may have been proper, however, for the defendants to show the cost of manufacture, as one of the elements which the jury might consider in determining the ultimate question of the purpose of the combination or agreement charged. The defendants went into this matter very fully in their defense. It was not error, therefore, to permit the prosecution, on rebuttal, to show that the cost of production of other bakers, under more or less parallel conditions, was less than the figure shown by the testimony of the defendants. If this inquiry was immaterial, it was opened up by the defendants themselves, and they could not preclude the prosecution from meeting the showing which they had voluntarily made. (4 C. J. 703, 704.) At any rate, the rulings complained of could not, in view of the nature of the charge, have worked any substantial prejudice.

The judgment and the order denying a new trial are affirmed.

Melvin, J., Wilbur, J., Richards, J., *pro tem.*, and Angellotti, C. J., concurred.