[Civ. No. 2468. Fourth Appellate District.—December 14, 1939.]

J. L. HUNTER, Petitioner, v. THE SUPERIOR COURT OF RIVERSIDE COUNTY et al., Respondents.

Sarau & Thompson and C. L. McFarland for Petitioner.

Best & Best and Richard K. Gandy for Respondents.

GRIFFIN, J.—The petitioner seeks a writ of prohibition preventing and enjoining the Superior Court of Riverside County from taking any further steps or proceedings in connection with a certain order to show cause citing petitioner to show cause why he should not be punished for contempt for violation of a certain judgment therein rendered.

The right to such writ is predicated upon the claim that the trial court is acting in excess of its jurisdiction in that the judgment upon which the citation for contempt has been issued is void upon its face.

The plaintiffs in that action were the respondents C. W. Morse and L. S. Morse. The petitioner, J. L. Hunter, was the defendant. The complaint set forth three causes of action and sought both injunctive relief and an accounting based upon two alleged contracts (exhibit A, dated January 12, 1937, and exhibit B, dated April 1, 1938). Exhibit A provides in part as follows:

"Whereas, the parties . . . have heretofore planned, designed and perfected designs for a machine to be used in forming, cutting and punching metal for use in the manufacture of Venetian blinds, and, . . . desire to employ the party of the first part (J. L. Hunter) to develop and manufacture said machine, and, . . . all the parties have agreed that the parties of the second part (Morses) shall pay to the party of the first part the sum of four hundred and fifty ($450.00) dollars for the purpose of developing and perfecting the first machine according to the ideas and designs of the parties of the second part, in form, substance and detail satisfactory to the parties of the second part, and to deliver the same to them. . . .

"I.

"It is mutually agreed that the parties of the second part shall receive 25¢ for each and every one thousand lineal feet of metal run through or processed by all machines which may under the terms hereof or otherwise be bought, sold, leased or otherwise disposed of or acquired by any one and that none of the parties hereto shall dispose of, sell, lease, hypothecate or otherwise deal in said machines, save and except when the same shall be subject to a contract with such purchaser, lessee, donee or other persons acquiring or dealing in the same, requiring the payment of the said 25¢ per one thousand lineal feet to the parties of the second part.

"II.

" . . . that it is the intention of the parties of the second part to sell and/or lease as many of such machines as may be possible, consistent with good business practice to do so and that all of said sales and/or leases shall be made subject to the restrictions contained in this agreement.

"III.

" . . . that said party of the first part shall have the sole and exclusive right to manufacture any and all machines sold, leased or otherwise disposed of during the life of this agreement, subject" (to certain conditions) . . .

"IV.

"The party of the first part promises and agrees not to manufacture any such or similar machines or any machines or tools for the purpose of cutting, shaping, punching, finishing, processing or painting metal for use in the manufacture of metal Venetian blinds, for any other person, firm,

.company, or corporation other than the parties of the second part, their successors or assigns, without the written consent of the parties of the second part.

"V.

" . . . agrees to manufacture any and all said machines after the said first machine has been perfected, developed, and delivered to the satisfaction of the parties of the second part, at a cost . . . ", etc.

"VI.

"As an essential condition hereof, the party of the first part agrees to manufacture, complete and place in shipment to the parties of the second part or their order, all machines ordered after the said first machine has been perfected and accepted, not later than thirty days after receipt of the order for said machines. If and in the event the party of the first part shall fail to make such shipment within said thirty day period after receipt of said order, then parties of the second part shall have the right to give the party of the first part a written notice terminating the right of the party of the first part to manufacture machines under this contract and upon receipt of said notice, all rights of the party of the first part hereunder shall cease and this contract be terminated, save and except, the party of the first part agrees he will not thereafter, at any time within a period of ten years from that date manufacture any machines for the purpose of cutting, shaping, punching, finishing, processing or painting metal for use in the manufacture of metal Venetian blinds. . . .

"VIII.

"The primary purpose of this agreement is that the party of the first part shall have the benefit of manufacturing all such machines put into use and the parties of the second part shall have the disposal and sale of said machines and the right to collect said 25¢ per one thousand lineal feet, upon the production of such machines.

"IX.

"It is expressly understood and agreed that the parties of the second part own all property rights in and to the design, idea and purpose of said machines whether patented, patentable, or neither and that the party of the first part, by virtue of this contract, acquires no rights in and to the same, save and except the right to manufacture said machines ac-

cording to the terms and conditions of this contract . . . unless terminated by mutual agreement or as provided herein, it shall be binding upon the parties hereto for a period of ten years from date.

"X.

" . . . that upon the termination or cancellation of this contract in any manner, the party of the first part will not for a period of ten years after such cancellation or termination, manufacture any machines or tools for the purpose of cutting, shaping, punching, finishing, processing or painting metal for use in the manufacture of metal Venetian blinds."

Exhibit B provides generally that:

"Whereas, the said party of the first part is engaged in the business of producing said machines and other machinery products, by doing business as the Hunter Engineering Company, and,

"Whereas, the said party of the first part is also engaged in the manufacture of Venetian blinds, and as such manufacturer of Venetian blinds is using the machinery and flexible metal slat which is the subject of the aforementioned contract of June 12, 1937; . . . each party hereto agrees that he will not engage in the manufacture of cut and punch Venetian blind slats for resale other than in the completed Venetian blind form, the product which is his own business, save and except as the parties of the other part may authorize in writing. Party of the first part further agrees that he will be bound by such rules and regulations in the use of his machines and in the sale of the product of said machines and of the flexible metal slat, as the parties of the second part may arrange by agreement or contract with other Venetian blind manufacturers; it being the intention of the parties by this proviso to provide that the party of the first part may operate as a Venetian blind manufacturer under as favorable terms and conditions as any other manufacturer of Venetian blinds, but under no more favorable terms, and to prohibit the party of the first part from operating the business of manufacturer of punched and cut and metal slats for use in assembling Venetian blinds for other manufacturers, save and except such exceptions as may be authorized by the party of the first part."

The prayer for relief in the complaint is (1) "That the defendants and each of them be enjoined and restrained from

the manufacture, sale, leasing or other disposal of any machines appropriate for the manufacture of metal Venetian blind slats, or any of the essential parts thereof''; and (2) ''That the defendants and each of them be restrained and enjoined from the manufacture of cut and punched Venetian blind slats for resale, other than in the completed Venetian blind form.''

Upon the filing of the complaint the court issued a temporary restraining order restraining and enjoining the defendant in accordance with the prayer of the complaint. A general and special demurrer were filed by the defendant Hunter, through his then attorney. It is claimed that these demurrers were never argued.

On June 28, 1938, a judge in another department of the superior court issued a temporary injunction restraining defendant from doing the acts related in the temporary restraining order.

No answer was filed and no trial was had upon the merits. On December 8, 1938, and after entry of the temporary injunction, a stipulated judgment was entered upon written stipulation of the parties in said action. The judgment provides generally:

''1. That the defendant J. L. Hunter, sued herein as J. G. Hunter, and the Hunter Engineering Company, their servants, agents and employees, and each of them, is hereby permanently enjoined and restrained to January 1st, 1956, from:

''(a) Manufacturing any machine, machinery, or the essential parts thereof, developed and/or perfected by any of the parties hereto as provided in a certain agreement dated June 12th, 1937, between the parties hereto, as set out in the complaint on file herein as Exhibit A, for the purpose of cutting, punching, shaping, finishing, processing or painting metal for use in the manufacture of metal Venetian blinds for any person, firm or corporation whatsoever other than plaintiffs herein or for the defendant himself, and from selling, giving or alienating title to said machinery to anyone whatsoever other than the plaintiffs herein, except with their written permission and consent;

''(b) From renting, leasing, shipping, delivering or otherwise disposing of any of the machine, machines, or essential parts thereof, as described in the preceding paragraph, to

any person, firm or corporation whatsoever, save and except the plaintiffs herein, in that certain territory composed of the states of Washington, Montana, Oregon, Idaho, Wyoming, California, Nevada, Utah, Colorado, Arizona, and New Mexico, Hawaiian Islands, Philippine Islands, Mexico, Alaska and British Columbia;

"(c) Selling, giving or contracting for, directly or indirectly, engineering services in connection with the manufacturing, processing, painting, shaping and finishing of metal for use in the manufacture of metal Venetian blinds, to any person, firm or corporation in the territory described in the preceding paragraph hereof;

"(d) Manufacturing, selling, shipping, delivering or otherwise disposing of cut and punch Venetian blind slats or from manufacturing, selling, leasing, painting, processing, delivering or otherwise disposing of metal for use as metal Venetian blind slats in non-assembled or cut and punched form in the territory described in paragraph (b) hereof, save and except with the written consent and permission of the plaintiffs herein.

"It Is Further Ordered, Adjudged and Decreed:

"2. That as long as the defendant J. L. Hunter shall have fully complied with all the terms and conditions of that certain contract dated the 14th day of October, 1938, by and between plaintiffs and the defendant herein, that the plaintiffs L. S. Morse and C. W. Morse, and each of them, and their servants, agents and employees, and each of them, be, and they are hereby enjoined and restrained to January 1st, 1956, from:

"(a) Manufacturing any machine, machinery, or the essential parts thereof, developed and/or perfected by any of the parties hereto as provided in a certain agreement dated June 12th, 1937 between the parties hereto, as set out in the complaint on file herein as Exhibit A, for the purpose of cutting, punching, shaping, finishing, processing or painting metal for use in the manufacture of metal Venetian blinds for any person, firm or corporation whatsoever other than plaintiffs herein or for the defendants, and from selling, giving or alienating title to said machinery to anyone whatsoever other than the parties hereto, except with the written permission and consent of the defendants.

"(b) From renting, leasing, shipping, delivering or otherwise disposing of any of the machine, machines, or the essential parts thereof, as described in the preceding paragraph, to any person, firm or corporation whatsoever, save and except the defendant herein, in that territory in the United States and the Dominion of Canada not specifically hereinabove set out as the territory in which the defendant is restrained from serving or operating, as hereinabove set forth.

"(c) Selling, giving or contracting for, directly or indirectly, engineering services in connection with the manufacturing, processing, painting, shaping and finishing of metal for use in the manufacture of metal Venetian blinds, to any person, firm or corporation in the territory described in the preceding paragraph hereof;

"(d) Manufacturing, selling, shipping, delivering or otherwise disposing of cut and punch Venetian blind slats or from manufacturing, selling, leasing, painting, processing, delivering or otherwise disposing of metal for use as metal Venetian blind slats in non-assembled or cut and punched form, in the territory described in paragraph (b) hereof, save and except with the written consent and permission of the defendant herein.

"This restraining order may be totally dissolved at any time after January 1st, 1944, by either party hereto, upon motion, without notice, provided said Motion is based upon the failure of the parties hereto to renew their agreement of the 14th of October, 1938, upon a verified affidavit, of any of the parties hereto."

On May 18, 1939, and within six months from the entry of the judgment of December 8, 1938, the petitioner herein served and filed a notice of motion to set aside and vacate the judgment. Thereafter and on the 6th of June, 1939, the motion to vacate and set aside the judgment was heard. It is alleged that the motion was argued at length, and the court's attention was particularly directed to the fact that the judgment was void for lack of the jurisdiction of the court to make and enter the judgment and that the same was void upon its face as being a judgment beyond the jurisdiction of the court to make and enter.

The court on the 4th of August, 1939, denied the motion. On the 25th day of August, 1939, the petitioner herein commenced an action in the Superior Court of Riverside County

against the respondents directly attacking the judgment of December 8, 1938, and by said action sought to set aside the judgment upon the ground that it was void upon its face, and in addition thereto prayed that the defendants be enjoined and restrained from taking any action whatsoever seeking to have the Superior Court of Riverside County enforce the judgment.

Upon affidavit, on the 5th day of October, 1939, the respondent, G. R. Freeman, as judge of the superior court of that county, issued his certain order to show cause directed to the petitioner herein, citing petitioner to appear before that court to show cause why he should not be punished for contempt for violation of paragraphs 1(a) and 1(b) of the judgment of December 8, 1938. The petition for writ of prohibition followed.

Petitioner now argues: (1) That the complaint does not state facts sufficient to constitute a cause of action for injunctive relief; (2) that the contracts upon which the complaint is predicated are not susceptible to specific performance, and therefore no injunctive relief could be granted; (3) that a stipulation for a judgment is no waiver of the right to attack its validity; (4) that the contracts upon which the complaint is predicated, the relief sought and the judgment entered are in restraint of trade and void; (5) that the judgment and decree of December 8, 1938, was beyond the power or authority of the court to make; and (6) that the judgment is void upon its face.

Respondent herein argues that petitioner should not be granted the relief as prayed for in the petition because he could have appealed from the order denying the motion to set aside the stipulated judgment. We see little merit to this contention. That an appeal from a consent judgment will not lie seems well established. (*People* v. *Hodges,* 205 Cal. 476 [271 Pac. 897].) Where an order is not the subject of appeal, it cannot be made reviewable by the device of moving to set it aside and of appealing from the order denying the motion. This is in accord with the rule which forbids a party to do indirectly that which he is forbidden to do directly. (2 Cal. Jur., p. 164, sec. 30; p. 169, sec. 31; *Estate of Baker,* 170 Cal. 578 [150 Pac. 989].)

Respondents urge as an additional reason why the writ of prohibition should not issue, the fact that there

is now pending in the Superior Court of Riverside County, an equitable action directly attacking the judgment and in addition thereto praying that the defendants (Morses) be enjoined and restrained from taking any action whatsoever seeking to have the superior court enforce the judgment of December 8, 1938. The relief sought in the equity suit is neither speedy nor adequate. If the trial court is about to imprison or fine petitioner for contempt under a void judgment, prohibition is a proper remedy. (*Evans* v. *Superior Court of San Francisco*, 14 Cal. (2d) 563 [96 Pac. (2d) 107].)

The next contention of respondents noted is the claim that although the provisions of the consent judgment may be outside the issues in the pleadings, they should be, nevertheless, sustained and enforced, citing 15 Ruling Case Law, page 643, section 86; Freeman on Judgments, fifth edition, pages 2772, 2773, sections 1349, 1350; *Lodge* v. *Williams*, 195 Ky. 773 [243 S. W. 1011]; *Jackson* v. *Brown*, 82 Cal. 275 [23 Pac. 142]; 14 Cal. Jur., p. 878; *Eichhoff* v. *Eichhoff*, 107 Cal. 42 [40 Pac. 24, 48 Am. St. Rep. 110]. This contention is disposed of by the general conclusion.

■ Petitioner argues the point and the authorities of the several states are in irreconcilable conflict upon the question whether equity will interfere to prevent a breach of the negative covenant in a contract when the affirmative covenant is of such a nature that it cannot be specifically enforced by a judicial decree. The conflict is discussed at length in *Anderson* v. *Neal Inst. Co.*, 37 Cal. App. 174 [173 Pac. 779], and *Long Beach Drug Co.* v. *United Drug Co.*, 13 Cal. (2d) 158 [88 Pac. (2d) 698, 89 Pac. (2d) 386], reaffirms the rule in this state to be that under subdivision 5 of section 3423 of the Civil Code, and subdivision 5 of section 526 of the Code of Civil Procedure, where a contract contains both affirmative and negative stipulations, equity will not interfere to prevent a breach of the negative covenant when the affirmative covenant is of such a nature that it cannot be specifically enforced by judicial decree, and courts of equity will not decree the specific performance of contracts which by their terms stipulate for a succession of acts whose performance cannot be consummated by one transaction, but will be continuous and require protracted supervision and direction.

Respondents contend that the question of susceptibility of contracts to specific performance is not open to argument on this hearing, citing *Morris* v. *Iden,* 23 Cal. App. 388, 395 [138 Pac. 120], and *General Petroleum Corp.* v. *Loughead,* 218 Cal. 554 [24 Pac. (2d) 457]. Respondents herein cite in support of the validity of the judgment and order *Coombs* v. *Burk,* 40 Cal. App. 8 [180 Pac. 59]; *Ghirardelli Co.* v. *Hunsicker,* 164 Cal. 355 [128 Pac. 1041]; *Davis* v. *Kittle Mfg. Co.,* 134 Cal. App. 254 [25 Pac. (2d) 253]; *Holley* v. *Hunt,* 13 Cal. App. (2d) 335 [56 Pac. (2d) 1240]; *Le Mesnager* v. *Variel,* 144 Cal. 463 [77 Pac. 988, 103 Am. St. Rep. 91]; *Estate of Ross,* 180 Cal. 651 [182 Pac. 752]; *Behrens* v. *Superior Court,* 132 Cal. App. 704, 707 [23 Pac. (2d) 428].

■ A greater degree or amount of certainty is required in the terms of an agreement which is to be specifically performed in equity than is necessary in a contract which is the basis of an action at law for damages. And the contract may be valid, and yet because of its inherent nature or because it lacks the necessary degree of definiteness, may be unenforceable either by a direct decree of specific performance, or indirectly by means of a prohibitory injunction.

■ From reading the contracts and the judgment rendered, we are convinced that a decree compelling specific performance would be most difficult, if not practically impossible, or impossible of enforcement.

The respondent also argues that the original action could be construed as an action enjoining petitioner from divulging trade secrets gained in a confidential relationship, and cites *Holley* v. *Hunt, supra,* in which case plaintiff was an inventor of a "metal toe protector". The action was one in declaratory relief seeking the construction by the court of the contract which had been entered into between the plaintiff and the defendant. Injunctive relief was also asked to prevent the defendant from further making or selling the device. The basis of the case was the protection of respondent's trade secrets. The court held that the law recognized property rights in trade secrets, and that a court of equity may, when its jurisdiction is properly invoked, enjoin the one in whom confidence has been reposed from divulging them to third persons or from taking advantage of them himself to the injury of the *owner.* We do not construe the original action here involved as one to enjoin petitioner from

divulging trade secrets of the *respondents*. The contracts set up in the complaint as part of the judgment roll remove this contention from further consideration.

It is finally contended that the provisions of the judgment are severable and that should any one of such provisions be void the court could, nevertheless, enforce such provisions as were valid, citing *Stack* v. *Welder,* 3 Cal. (2d) 71 [43 Pac. (2d) 270]; *Corbett* v. *Corbett,* 113 Cal. App. 595 [298 Pac. 819]; *Reichert* v. *Rabun,* 89 Cal. App. 375 [265 Pac. 260].

■ A contract in restraint of trade is entirely void where it is indivisible, but when divisible and severable, those provisions not in restraint of trade may be enforced. (*Morey* v. *Paladini,* 187 Cal. 727 [203 Pac. 760]; *Fidelity Credit Assur. Corp.* v. *Cosby,* 90 Cal. App. 22 [265 Pac. 372]; *Rossiter* v. *Thompson,* 66 Cal. App. 491 [226 Pac. 806].)

Petitioner is seeking to determine and maintains that the judgment given under the contract is void in its entirety. The violation claimed, i. e., soliciting for, selling and delivering one of the machines mentioned to a corporation in Los Angeles County, California, involves not only paragraphs 1(a) and 1(b) of the judgment but would also bring into consideration paragraph 1(c) and other provisions of the judgment.

Considering all of the issues presented, the court here is mainly concerned with whether or not the judgment is on its face void, and whether or not it is such a judgment as the court had no power or jurisdiction to make under the circumstances.

■ Nullity of judgments results from a want of legally organized court or tribunal; want of jurisdiction over the subject-matter or the parties; or want of power to grant the relief contained in the judgment. (Freeman on Judgments, 5th ed., sec. 325, p. 650; sec. 226, at p. 444. See, also, 34 Cor. Jur., p. 268, sec. 492; *Jellen* v. *O'Brien,* 89 Cal. App. 505 [264 Pac. 1115]; *Luckenbach* v. *Krempel,* 188 Cal. 175 [204 Pac. 591]; *Grannis* v. *Superior Court,* 146 Cal. 245 [79 Pac. 891, 106 Am. St. Rep. 23]; *People* v. *Harrison,* 107 Cal. 541 [40 Pac. 956].) Whether the judgment is void on its face must be determined from an inspection of the judgment roll alone, and unless this record shows affirmatively that the court was without jurisdiction, the judgment is not subject to this summary action. (*Canadian & A.*

*Mortgage & T. Co.* v. *Clarita Land & Inv. Co.*, 140 Cal. 672 [74 Pac. 301].)

Section 1673 of the Civil Code provides: "Contract in restraint of trade, void. Every contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, otherwise than is provided by the next two sections, is *to that extent* void." Section 1674, Civil Code, provides: "Exception in favor of sale of goodwill. . . . " Section 1675 of the same code provides: "Exception in favor of partnership arrangements. . . . " The contracts under consideration involve neither the sale of a business nor its good will, nor the dissolution of a copartnership. The legality or illegality of the judgment must be determined by the terms and provisions of section 1673 of the Civil Code. If the judgment comes within the inhibition of that section, then it is to that extent void. There is nothing which the parties to the action could do which would in any way add to its validity. If the contracts upon which the judgment is based are to that extent void, they cannot be ratified either by right, by conduct or by stipulated judgment. (14 Cal. Jur. 1016; *Palace Hardware Co.* v. *Smith,* 134 Cal. 381 [66 Pac. 474]; *Wood* v. *Imperial Irr. Dist.,* 216 Cal. 748 [17 Pac. (2d) 128]; *Thompson* v. *Alford,* 128 Cal. 227 [60 Pac. 686]; *Bernheim* v. *Cerf,* 123 Cal. 170 [55 Pac. 759].)

In *Wright* v. *Ryder,* 36 Cal. 342 [95 Am. Dec. 186], the California Steam Navigation Company sold a steamer to the Oregon Steam Navigation Company upon the condition that for a period of ten years the operator would not operate the boat in any California waters. The question was whether or not this condition was in restraint of trade and void. The court stated:

" 'Contracts which go to the total restraint of trade, as that a man will not pursue his occupation or carry on his business *anywhere in the state, are void, upon whatsoever consideration they may be made.' " (Italics ours.)

To the same effect are the cases of *Getz Bros. & Co.* v. *Federal Salt Co.,* 147 Cal. 115 [81 Pac. 416, 109 Am. St. Rep. 114]; *Vulcan Powder Co.* v. *Hercules Powder Co.,* 96 Cal. 510, 515 [31 Pac. 581, 31 Am. St. Rep. 242]; *Merchants Ad-Sign Co.* v. *Sterling,* 124 Cal. 429 [57 Pac. 468, 71 Am. St. Rep. 94, 46 L. R. A. 142].

114

Mr. Freeman, in his work on judgments, volume 1, fifth edition, page 759, says:

"A different rule has been observed where the contract is wholly void as being absolutely prohibited by statute. When, for example, no penalty is provided for a violation of the statute and the contract is prohibited as being against good morals and the public interest, such contract is entirely void and unenforceable, and a judgment or decree purporting to enforce it does not impart any validity to it and the same may be taken advantage of in a collateral attack." (Citing *People* v. *Burke,* 72 Colo. 486 [212 Pac. 837, 30 A. L. R. 1085].)

See, also, *People* v. *H. Jevne Co.,* 179 Cal. 621 [178 Pac. 517] ; 6 R. C. L. 791; 2 R. C. L. Supp. 207; *Summerhays* v. *Scheu,* 10 Cal. App. (2d) 574 [52 Pac. (2d) 512].

 Under the authorities cited, it cannot be said that the agreement whereby the party of the first part promises and agrees not to manufacture any similar machines, *or any machines* (unpatented) or tools for the purpose of cutting, shaping, punching, finishing, processing or painting metal for use (anywhere, any place, or any time) in the manufacture of metal Venetian blinds for any other person, firm, company, or corporation other than the parties to said agreement, namely, the respondents herein, without their written consent, is not void.

Likewise, it cannot be said that the agreement, which provides that after it has been terminated by an expiration of time provided, shall nevertheless be binding upon the petitioner herein for a period of ten years so as to prevent the said petitioner from manufacturing any machines or any tools for the purpose of cutting, shaping, punching, finishing, processing or painting metal for use in the manufacture of metal Venetian blinds is not void.

In *Summerhays* v. *Scheu, supra,* it was claimed the oral agreement was that defendant "would never again enter into the orchard heater business at any place, especially in California". The court held that such a contract was void under section 1673 of the Civil Code as being a contract in restraint of trade. (See, also, *Rossiter* v. *Thompson, supra.*)

It is unnecessary to determine whether other provisions of the contract and judgment entered thereunder are susceptible of a similar interpretation, but the ones mentioned will

suffice to hold the contract to that extent void as against public policy and therefore those portions are unenforceable under the terms of the decree. (*People* v. *Burke, supra; Dial* v. *Kirkpatrick,* 168 Okl. 21 [31 Pac. (2d) 591, 95 A. L. R. 1263] ; *Kenoly* v. *Hawley,* 84 Okl. 120 [202 Pac. 494].) The contract and decree based thereon do not come within the exceptions specified in sections 1674 and 1675 of the Civil Code. The declarations in section 1673 of the Civil Code must, therefore, prevail.

The only provision in the contract as to renting, leasing and disposing of the machines is paragraph 1. Subdivision (c) of the judgment enjoins the petitioner from ''selling . . . directly or indirectly . . . in the territory described, . . . engineering services in connection with the manufacturing. . . . '' Nowhere in the agreement or the complaint do we find any foundation for such an injunctive clause as to a territorial limitation.

From a careful examination of those portions of the reciprocal stipulated judgment which we have fully set out to illustrate its effect, it clearly sets forth an intention of the parties to create a monopoly in the manufacture, sale, leasing, and use of the described machines in controversy. (*Santa Clara Val. Mill & L. Co.* v. *Hayes,* 76 Cal. 387 [18 Pac. 391, 9 Am. St. Rep. 211] ; *Herriman* v. *Menzie's,* 115 Cal. 16 [44 Pac. 660, 46 Pac. 730, 56 Am. St. Rep. 81, 35 L. R. A. 318] ; *Pacific Factor Co.* v. *Adler,* 90 Cal. 110 [27 Pac. 36, 25 Am. St. Rep. 102] ; 17 Cal. Jur., pp. 640, 641, 642, secs. 2, 3, 4.) By the terms of this judgment it will be noted that Hunter is restrained until January 1, 1956, from manufacturing, leasing, selling, or disposing of said machines or machinery, etc., except with the Morses' written permission and consent, to anyone whomsoever, other than the Morses, in certain prescribed territory. In turn, the Morses are enjoined and restrained from manufacturing, leasing, selling, or otherwise disposing of the machines, machinery, etc., in the same territory, to any person, firm, or corporation except to or for the plaintiffs (Morses) or to or for the defendant (Hunter) without the consent of the defendant (Hunter). For the reasons expressed, the provisions of the judgment to which we have referred do restrain the petitioner herein from exercising a lawful profession, trade, or

business, and is against public policy and to that extent void upon its face.

If a court grants relief, which under no circumstances it has any authority to grant, its judgment is *to that extent* void. (*Grannis* v. *Superior Court,* 146 Cal. 245 [79 Pac. 891, 106 Am. St. Rep. 23]; *People* v. *Davis,* 143 Cal. 673 [77 Pac. 651]; *Michel* v. *Williams,* 13 Cal. App. (2d) 198 [56 Pac. (2d) 546]; *Ritchie* v. *Sayers,* 100 Fed. 520.)

The writ of prohibition will issue as prayed for in the petition.

Barnard, P. J., and Marks, J., concurred.