REINHARDT, Circuit Judge,
concurring in part and dissenting in part:
I agree that sanctions should not have been imposed against Robinson. In fact, Robinson should have prevailed below. Therefore, I dissent from all but the sanctions section of Judge Fernandez’s opinion.
Under California law, the disputed state court judgment is void and Robinson has the substantive right to have it set aside. In the California courts the procedure for accomplishing that result is to bring an action for a writ of prohibition. Moffat v. Moffat, 27 Cal.3d 645, 612 P.2d 967, 972-74, 165 Cal.Rptr. 877, 882-84 (Cal.1980). However, California’s procedural rules do not govern proceedings in the federal courts. Nor in the absence of any pending proceeding in the California courts does Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), dictate federal abstention solely in order to safeguard a judgment that the California courts themselves would regard as a nullity. Accordingly, I believe that the state court judgment does not bar the federal courts from reaching the merits of Robinson’s federal claim. Finally, because the plain language of the federal statutes that govern contracts with Indians relating to their tribal lands demonstrates that the contract between Robinson and Borneo and the assignment from Borneo to CLIB are null and void ab initio, I would grant Robinson the relief it seeks.
I
California’s rule that a party may attack a prior judgment as based on a void contract only by seeking a writ of prohibition is fundamentally procedural rather than substantive in nature. It governs the form of the action, not whether an action may be brought. Accordingly, under Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), it does not apply in federal court.[1] Moffat may not be invoked to preclude the district court from reaching the merits of Robinson’s claim.
If a case presents a direct conflict between a state procedural rule and a federal procedural rule promulgated pursuant to the Rules Enabling Act, 28 U.S.C. § 2072, the federal courts will nearly always apply the federal rule, deviating from this con-gressionally prescribed course only where that rule abridges or otherwise modifies a substantive right. Hanna v. Plumer, 380 U.S. 460, 471-74, 85 S.Ct. 1136, 1144-46, 14 L.Ed.2d 8 (1965); Olympic Sports Prod., Inc. v. Universal Athletic Sales Co., 760 F.2d 910, 914 (9th Cir.1985), cert. denied sub nom. Whittaker Corp. v. Olympic Sports Prod., Inc., 474 U.S. 1960, 106 S.Ct. 804, 88 L.Ed.2d 780 (1986). Here, however, there is no federal analog to the California rule regarding the permissible form of attack on a judgment that is based on a void contract. If no federal rule directly addresses a situation in which application of a state rule is urged, the federal court must look instead to the more open-ended balancing analysis set forth in Erie. Hanna, 380 U.S. at 471, 85 S.Ct. at 1144; Olympic Sports Prod., 760 F.2d at 910. Applying that test, I would conclude that the district court may grant the relief Robinson requests.
*256 Broadly speaking, “the core policy of Erie is that plaintiff should not be able to choose a different outcome for a lawsuit by filing in federal court rather than state court.” Olympic Sports Prod, 760 F.2d at 913 (citing Guaranty Trust Co. v. York, 326 U.S. 99, 109-10, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945)). Because every procedural rule is in some sense outcome-determinative, however, the Court has cautioned against a literal application of the outcome test. Hanna, 380 U.S. at 466-68, 85 S.Ct. at 1141-42 (“ ‘Outcome-determination’ analysis was never intended to serve as a talisman.”). Instead, the federal court should frame its analysis in terms of “the twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws.” Id. at 468, 85 S.Ct. at 1142. Put differently, the correct inquiry is whether the “character or result of a litigation” would differ “materially” because the suit was brought in federal rather than in state court. Id. at 467, 85 S.Ct. at 1141; see also id. at 468 n. 9, 85 S.Ct. at 1142 n. 9.
Considered in light of the principles set forth in Erie, the Moffat rule plainly is not outcome-determinative in the sense meant in York and Hanna. The rule governs the “form and mode” of a challenge to a void judgment, Byrd v. Blue Ridge Elec. Coop., Inc., 356 U.S. 525, 536, 78 S.Ct. 893, 900, 2 L.Ed.2d 953 (1958); it does not purport to guide courts’ deliberations on the merits of such challenges. This is not a case in which “application of the state rule would wholly bar recovery.” Hanna, 380 U.S. at 469, 85 S.Ct. at 1143. Under the state rule, recovery is available to a party that requests a writ of prohibition from the appropriate court — a course of action that is, as the majority notes, still available to Robinson. In the absence of a specific federal rule, the federal courts must determine the appropriate federal procedure for affording Robinson the same opportunity to argue the merits of its claim that it would have been afforded had it sought a writ of prohibition in the California court system.
The third question posed by the majority — whether California itself would deny res judicata effect to the state court judgment if the contract between Robinson and Borneo was void — must be answered in the affirmative. Had Robinson sought a writ of prohibition in the California appellate courts, there is every reason to believe that it would have prevailed. See infra Part III.[2] Because the California courts would treat the state court judgment against Robinson as void, we are obligated to do likewise. Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380-81, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985).
II
Without the crutch provided by Moffat, the majority’s rationale for refusing to entertain Robinson’s claim is reduced to the proposition that the principles of comity and full faith and credit which govern the relationship between federal and state courts preclude us from declaring a state court judgment to be void. While I have no quarrel with that proposition as a general matter, the majority’s reasoning ignores the fact that the California courts themselves have, ex ante, exempted the narrow class of judgments into which this case *257 falls from the ordinary rules precluding further judicial review of final judgments.
Concerns of comity require only that we accord the Los Angeles Superior Court judgment the preclusive effect that would be accorded by the California courts. Marrese,• 470 U.S. at 380-81, 105 S.Ct. at 1332 (1985). The California courts have determined that a judgment that is based on a void contract is itself void and subject to attack — by writ of prohibition. In such cases, the original legislative declaration that a particular type of contract violates public policy outweighs the state’s ordinarily paramount interest in the finality and authority of its judgments. Cf. Hunter v. Superior Court, 36 Cal.App.2d 100, 113-14, 97 P.2d 492 (1939). There is no indication that the origin of the legislative declaration at issue alters this calculus. A decision on our part to treat the judgment in favor of Borneo the same way the state treats it does not undermine federal-state comity. Under state law, the judgment may be set aside by an appropriate judicial determination. Federal courts need not give the judgment more weight than the law of California requires.
The fact that California has specified a particular procedure for an attack on such judgments is, as explained in Part I, supra, irrelevant for our purposes. The lesson of Erie and subsequent cases is that state courts may not decree the procedures to be followed when federal courts consider questions of state law. That is a matter for the federal courts to determine. The majority opinion requires Robinson to file two additional lawsuits — one in state court, then one in federal court — in order to obtain the federal relief to which it is entitled. That makes little sense to me. Nor do I see any purpose in requiring Robinson to file two separate federal actions — one to set aside the void state court judgment and then one to enforce its federal rights. Rather, I would hold that the proper procedure for the federal courts to follow is to permit Robinson to pursue its pending action in the district court and to permit that court either to declare the state court judgment void, as the state courts would do, or simply to refuse to give res judicata effect to a judgment that is void under state law. In my opinion, the latter course is the simpler and more appropriate procedure for the federal courts to follow in this ease.
The majority further obscures the requisite full faith and credit analysis by tossing in the now-seemingly obligatory reference to Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987).[3] There is no indication that any proceeding to enforce the state court judgment is currently underway in the California courts. As the Court recently explained, “we have never applied the notions of comity so critical to Younger’s ‘Our Federalism’ when no state proceeding was pending.” Ankenbrandt v. Richards, — U.S.-, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992).
Moreover, even if an enforcement proceeding against Robinson were pending in state court, the particular factors that counseled federal abstention in Pennzoil are not present here. First, this case does not present a federal constitutional question that arguably need not be reached. Pennzoil, 481 U.S. at 11-12, 107 S.Ct. at 1526. Rather, Robinson’s claim for relief turns solely on the interpretation of a fed *258 eral statute, and any court considering a petition for relief from the earlier judgment must reach the federal question. Second, as I have explained above, no important state interest would be implicated by a declaration refusing to permit Borneo to interpose the void judgment. Id. at 12-14, 107 S.Ct. at 1527; Ankenbrandt, 112 S.Ct. at 2216 (Younger abstention inapplicable where there is no assertion of important state interests). Finally, we cannot, as in Pennzoil, “assume that state procedures will afford an adequate remedy.” 481 U.S. at 15, 107 S.Ct. at 1528. The remedy created by Congress for violation of sections 81 and 84 of Title 25 — recovery of all money paid to the non-Indian party in excess of the amount approved by the Commissioner of Indian Affairs — is available only in federal court. 25 U.S.C. §§ 81, 84 (1988).
Moreover, Pennzoil is inapplicable because in order to grant Robinson the relief it seeks we would not need to take any affirmative action regarding the prior judgment in favor of Borneo. The majority makes light of this distinction, but it is a practical one. Unlike the federal plaintiff in Pennzoil, Robinson did not request us to set aside the state court judgment. Rather, it filed this federal action to request that we set aside as void the contract between it and Borneo. The judgment was raised defensively by Borneo. We are under no obligation to allow a party to invoke a prior state court judgment as a defense if that judgment is void as a matter of state law. Rather, as I have demonstrated, both the full faith and credit statute and established principles of federal-state comity demand otherwise.
In a nutshell, this case is one of those rare instances in which proper respect for state law and state courts would be demonstrated not by deferring to a valid state court decision, but by declining to defer to a void one. The mere presence of a question regarding the effect of a state court action or decision on our deliberations does not end the inquiry required of us. It is axiomatic that the federal courts have a “virtually unflagging obligation ... to exercise the jurisdiction given them.” Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). That obligation is not lessened by the fact that a case raises issues of federal-state comity, or by the fact that sorting through the tangle of state and federal law to reach the correct result would be difficult. Rather than “surveying] the field of battle” and then reaching the reasoned, independent decision required of it, however, the majority retreats, waving the white flag of Pennzoil to cover its flank. Its reasoning elevates federal inaction to the status of an independent virtue, at great disservice to both state and federal law.
Because the contract between Robinson and Borneo and the assignment from Borneo to CLIB became part of the judgment roll in the state court action, the judgment is subject to jurisdictional attack in the California courts under the rule set forth in Hunter.[4] Accordingly, it is subject to attack in federal court under the same rule. If the contract and the assignment are indeed null and void, as Robinson contends, then under Hunter the state court judgment is also void and does not preclude us from granting the relief sought.
Ill
On the merits, Robinson’s entitlement to relief is clear. Sections 81 and 84 of Title 25 provide that no agreement or assignment of an agreement made with an Indian tribe and relating to tribal trust property shall be valid unless the agreement or assignment complies with certain enumerated requirements. 25 U.S.C. §§ 81, 84 (1988). The contract between Robinson and Borneo and the assignment to CLIB do not fulfill *259 all of the requirements imposed by the two statutes. Accordingly, both the contract and the assignment are null and void ab initio.
Borneo argued that approval of the contract and the assignment by the Secretary of the Interior constitutes “substantial compliance” with sections 81 and 84, respectively, and cures the failure to comply with other, more “technical” requirements imposed by the statutes. The plain language of the statutory provisions defeats this argument. Section 81 provides in relevant part:
No agreement shall be made by any person with any tribe of Indians ... for the payment or delivery of any money or other thing of value, in present or in prospective, or for the granting or procuring of any privilege to him, or any other person in consideration of services for said Indians relative to their lands ... unless such contract or agreement be executed and approved as follows:
Second. It shall bear the approval of the Secretary of the Interior and the Commissioner of Indian Affairs endorsed upon it.

Third. It shall contain the names of all parties in interest, their residence and occupation....

Fourth. It shall state the time when and place where made....
All contracts or agreements made in violation of this section shall be null and void....
25 U.S.C. § 81 (emphasis added). Similarly, section 84 specifies that “[n]o assignment of any contracts embraced by section 81 of this title ... shall be valid unless the names of the assignees and their residences and occupations be entered in writing upon the contract, and the consent of the Secretary of the Interior and the Commissioner of Indian Affairs to such assignment be also endorsed thereon.” Id. § 84 (emphasis added).
As the majority notes, the contract between Robinson and Borneo and the assignment to CLIB did not satisfy the statutory requirements. In particular — and most important to the statutory purpose of protecting Indians from “ ‘improvident and unconscionable contracts’ ” — the names, addresses, and occupations of the principals of Borneo and CLIB were not listed. A.K. Management Co. v. San Manuel Band of Mission Indians, 789 F.2d 785, 787 (9th Cir.1986) (quoting In re Sanborn, 148 U.S. 222, 227, 13 S.Ct. 577, 579, 37 L.Ed. 429 (1893)).[5] Accordingly, under the clear and unambiguous language of sections 81 and 84, both the contract and the assignment were void ab initio. See also Indian Contract, 18 Op.Atty.Gen. 497 (1986) (approval by the Secretary does not validate an otherwise defective contract); cf. Sangre de Cristo Dev. Co. v. United States, 932 F.2d 891, 894 (10th Cir.1991) (holding that a lease of tribal lands was void ab initio despite its approval by the Department of the Interior because the lease failed to satisfy other requirements imposed by 25 U.S.C. § 415(a)) (citing Gray v. Johnson, 395 F.2d 533, 537 (10th Cir.), cert. denied, 392 U.S. 906, 88 S.Ct. 2056, 20 L.Ed.2d 1364 (1968)). Nowhere does the statute define “violation of this section” solely in terms of failure to obtain government approval, as suggested by Borneo. Rather, the phrase “violation of this section” applies equally to all of the enumerated requirements.
Because the contract between Robinson and Borneo and the assignment to CLIB are “wholly void as being absolutely prohibited by statute,” under California law the state court judgment is a nullity. Hunter, 36 Cal.App.2d at 114, 97 P.2d 492.[6] *260 For the same reason, Robinson’s entitlement to a judgment setting aside the contract and assignment and ordering recovery of all amounts paid to Borneo and CLIB “in excess of the amount approved by the [government] for such services,” 25 U.S.C. § 81, is clear as a matter of federal law.[7] Accordingly, I would grant Robinson the relief it has requested.

. The case before us is not in federal court because of diversity jurisdiction, and therefore is not governed by the Rules of Decision Act, 28 U.S.C. § 1652. However, the analysis developed in Erie and the Erie line of cases applies with equal force to a case that presents a question regarding the res judicata effect of a state court decision. In such a case, it is the full faith and credit statute, 28 U.S.C. § 1738, rather than the Rules of Decision Act which dictates that we must look to the laws of the rendering state in determining the weight to which a decision of its courts is entitled. Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380-81, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985). "[W]here Congress directly or impliedly directs the courts to look to state law to fill in the details of federal law, Erie will ordinarily provide the framework for doing so.” DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 159 n. 13, 103 S.Ct. 2281, 2288 n. 13, 76 L.Ed.2d 476 (1983).

. The majority’s reliance on Moffat for the proposition that the California courts would, in any event, look with disfavor on Robinson’s attack on the state court judgment is disingenuous. In Moffat, a wife sought to set aside a contempt order in a proceeding under the Revised Uniform Reciprocal Enforcement of Support Act (RURESA). The challenged order suspended her right to receive child support payments. In addition to holding that Mrs. Moffat could not collaterally attack the order in a RURESA proceeding, the court noted that: 1) contempt orders are non-appealable and subject to review only by extraordinary writ; 2) a decision to set aside the challenged order would have imposed retroactive liability on Mr. Moffat for two and a half years of child support payments; 3) Mrs. Moffat first sought to have the order set aside more than two years after it had been issued; and 4) in the interim she “systematically endeavored to circumvent the visitation order through an unrelenting variety of legal proceedings.” 612 P.2d at 969. Moreover, child support and custody decrees, unlike the type of decree before us, are subject to modification in the state trial court as circumstances and conditions change.

. The majority also cites several cases for the proposition that we are not authorized to review state court judgments. See Allah v. Superior Court, 871 F.2d 887, 890-91 (9th Cir.1989); Mac-Kay v. Pfeil, 827 F.2d 540, 543 (9th Cir.1987); Worldwide Church of God v. McNair, 805 F.2d 888, 890-91 (9th Cir.1986). The rule that federal courts cannot conduct de facto appellate review of state court judgments, District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 103 S.Ct. 1303, 1315, 75 L.Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923), is no more and no less than another expression of the overarching principle of comity that requires us to accord such judgments full faith and credit. If the full faith and credit statute does not bar a refusal to accord preclusive effect to a particular state court judgment, it defies logic and fairness to hold that such a refusal is nonetheless barred by Rooker and Feldman. In a case in which the full faith and credit statute not only does not bar us from refusing to treat a state court judgment as res judicata, but under Erie and Marrese actually requires that we do so, the argument against application of Rooker and Feldman is even more compelling.

. A contract is part of the judgment roll if it is incorporated by reference in the pleadings or in any other document that is included in the judgment roll by statute. See, e.g., Call v. Alcan Pacific Co., 251 Cal.App.2d 442, 448, 59 Cal.Rptr. 763 (1967) (citing Cal.Civ.Proc.Code § 670). CLIB’s Petition to Confirm Arbitration Award, filed in the Los Angeles County Superior Court on March 27, 1989, incorporates the agreement between Robinson and CLIB "by this reference as though fully set forth."

. In view of the potential that exists for infiltration by organized crime of gambling activities conducted on Indian tribal lands, the failure to list the names and addresses of the non-Indian parties involved is particularly troubling and is, in my view, precisely the sort of circumstance that sections 81 and 84 were enacted to prevent. It is difficult to understand how the Bureau of Indian Affairs could have approved a clause that assigned the contract to an entity not yet formed.

. The statute at issue in Hunter provided that "[e]very contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind ... is to that extent void.” *260 Cal.Civil Code § 1674, quoted in Hunter, 36 Cal. App.2d at 113, 97 P.2d 492. Accordingly, the Hunter court struck down only those provisions of the challenged contract that were in restraint of trade. 36 Cal.App.2d at 114-15, 97 P.2d 492. By contrast, the language of sections 81 and 84 indicates that any contract or assignment that does not satisfy all of the enumerated requirements is void in its entirety. Accordingly, no part of the state court judgment may stand.

. Borneo further argued, and the district court agreed, that an order invalidating the contract and assignment would unjustly enrich Robinson. However, ‘‘[t]he potential economic interest of nonlndians in a contractual relationship with a tribe is not within the intended purview of [section 81].” United States ex rel. Shakopee v. Pan American, 616 F.Supp. 1200, 1208 (D.Minn.1985) (citing Leaf Tobacco Exporters Ass’n, Inc. v. Block, 149 F.2d 1106 (4th Cir.1984); Granville House, Inc. v. DHHS, 715 F.2d 1292 (8th Cir.1983); and Dialysis Centers, Ltd. v. Schweiker, 657 F.2d 135 (7th Cir.1981)), appeal dismissed, 789 F.2d 632 (8th Cir.1986). We have never hesitated to enforce the laws enacted by Congress for protection of the Indians on the ground that to do so would be inequitable to the non-Indian party. See, e.g., United States v. Southern Pac. Transp. Co., 543 F.2d 676, 699 (9th Cir.1976) (“Although it may appear harsh to condemn an apparently good-faith use as a trespass after 90 years of acquiescence by the owners, we conclude that an even older policy of Indian law compels this result.") Bacher v. Potencio, 232 F.Supp. 939, 941 (C.D.Cal.1964) (invalidating sale of land by Indians even though the non-Indian party had given fair consideration for the property), aff'd, 368 F.2d 1010 (9th Cir.1966).