657 F.2d 135
 DIALYSIS CENTERS, LTD., Plaintiff-Appellant,
v.
Richard S. SCHWEIKER,* Sec'y of the U. S.
Department of Health and Human Services, and The
United States Department of Health and
Human Services, Defendants-Appellees.
 No. 80-2368.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 6, 1981.
Decided Aug. 18, 1981.
 
 Michael H. King, Robert J. Pristave, Linda A. Malone, Chicago, Ill., for plaintiff-appellant.
 Robert B. Breisblatt, Asst. U. S. Atty., Chicago, Ill., for defendants-appellees.
 Before CUMMINGS, Chief Judge, BAUER, Circuit Judge, and HOFFMAN,** Senior District Judge.
 CUMMINGS, Chief Judge.
 
 
 1
 Plaintiff Dialysis Centers, Ltd., an Illinois corporation, operates four kidney dialysis facilities in the Chicago area for the treatment of patients with end-stage renal disease and is an approved supplier of such treatment under the Medicare Act's End-Stage Renal Disease Program. On April 8, 1980, plaintiff brought this action for declaratory and injunctive relief against the Secretary and Department of Health and Human Services (HHS), alleging that the Secretary's approval of another dialysis facility in the Chicago area was arbitrary and capricious, violative of the applicable statute and regulations promulgated thereunder, and violative of plaintiff's Fifth Amendment right to due process. The Secretary moved to dismiss the suit for want of subject matter jurisdiction, lack of standing, and failure to state a claim upon which relief can be granted. The district court held that it lacked subject matter jurisdiction and dismissed the action with prejudice. We conclude that plaintiff failed to state a claim upon which relief can be granted and for that reason affirm the district court's dismissal.
 
 
 2
 On July 1, 1973, pursuant to amendments to the Social Security Act which established the End-Stage Renal Disease (ESRD) Program, virtually all persons suffering from chronic renal disease became eligible for reimbursement through Medicare of 80% of the reasonable costs of dialysis treatment, beginning three months after a course of treatment has begun.[1] These reimbursement payments are made directly to treatment facilities that have obtained approval for coverage and been issued federal provider numbers. A facility that wishes to be approved for coverage must "meet such requirements as the Secretary shall by regulation prescribe." 42 U.S.C. § 1395rr(b)(1).
 
 
 3
 Under the Secretary's final regulations, which became effective September 1, 1976, an existing facility applying for approval must, inter alia, show that its services are needed in the area it seeks to serve (42 C.F.R. § 405.2132) and that it meets the "minimal utilization rate," which is computed in terms of dialysis treatments per station per week (42 C.F.R., § 405.2130). The facility must also be certified for operation by the state in which it is located. Beginning in September 1976, the Secretary also established, through a series of letters to state health agencies and regional HHS offices, a procedure for "advance approval" of proposed ESRD facilities. Advance approval is granted upon the applicant's submission of satisfactory evidence that the proposed services are needed and a satisfactory plan to show that the minimal utilization rate requirements will be met. A federal provider number is not issued until HHS receives certification from the relevant state agency that the facility is licensed for operation pursuant to state law.
 
 
 4
 As part of the ESRD Program, Congress also authorized the Secretary to establish ESRD "network" organizations throughout the country. 42 U.S.C. § 1395rr(c)(1)(A). Each qualified ESRD facility must supply a representative to the network for its geographical area. 42 C.F.R. § 405.2111. The networks are required by statute to provide certain services and information to assist the Secretary in administering the ESRD Program. Among these obligatory services is the submission of an annual report which sets forth the network's recommendations and goals with respect to additional services in its area. 42 U.S.C. § 1395rr(c)(2)(E). In determining whether to approve additional facilities the Secretary is required "to take into account the network's goals and performance as reflected in the network's annual report." 42 U.S.C. § 1395rr(c)(4). The regulations further provide that "data furnished by the network organizations * * * shall be considered by the Secretary in determining whether to approve a facility for coverage" under the program. 42 C.F.R. § 405.1912(a). The determination of whether a facility should be approved, however, is the Secretary's alone. 42 C.F.R. § 405.1912.
 
 II
 
 5
 Plaintiff in this action seeks to enjoin what it terms the Secretary's "wrongful" approval of a dialysis facility located on the northwest side of Chicago in close proximity to one of plaintiff's facilities. The facts as alleged by plaintiff are that a Dr. Walid Ghantous on May 23, 1978, sought advance approval of an ESRD facility with 28 dialysis stations to serve patients from the suburban area north of Chicago. In accordance with the agency's usual practice, the HHS regional office submitted the Ghantous application for comment by "Network 15," the ESRD network organization for Illinois, which recommended approval with certain limitations on the number of dialysis stations. The HHS regional office initially denied the application because of insufficient showing of need, but, on March 26, 1979, after receiving additional information from the applicant, gave advance approval for a facility with six dialysis stations. Approximately five months later, the HHS regional office was notified that construction of the Ghantous facility was underway at 4848 West Belmont Avenue on the northwest side of Chicago and granted a requested extension of the advance approval.[2] On February 6, 1980, the Illinois Department of Public Health, the state licensing agency, conducted an on-site inspection of the new facility and, on February 8, 1980, certified it for operation. However, at the time the complaint was filed, HHS had not yet issued the Ghantous facility its federal provider number, and it was this event that plaintiff's suit was intended to prevent.
 
 
 6
 Plaintiff alleged that the original advance approval of the Ghantous application contemplated a facility to serve the suburban area north of Chicago, not a facility located on the northwest side of Chicago, so that the agency's extension of advance approval to the facility without a new inquiry into need and a resubmission of the application to Network 15 was arbitrary and capricious, an abuse of discretion, and in violation of the applicable statute, regulatory provisions, and agency practices. Plaintiff further alleged that it would suffer irreparable harm through loss of patients, revenue and investment monies if the approval was permitted to stand and that the agency's wrongful approval violated plaintiff's due process rights under the Fifth Amendment. In its original complaint, plaintiff sought a temporary restraining order prohibiting the Secretary from issuing the Ghantous facility a federal provider number, preliminary and permanent injunctions to the same effect, and a declaration that the approval was unlawful.[3] Jurisdiction was alleged under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201; the Administrative Procedure Act, 5 U.S.C. §§ 702, 703 and 706; and 28 U.S.C. § 1331(a).
 
 
 7
 On April 9, 1980, the day after the complaint was filed, District Judge Aspen held a hearing on plaintiff's request for a temporary restraining order. During the hearing, counsel for the Secretary informed the court that a federal provider number had been issued to the Ghantous facility the previous day, after the complaint was filed but before it was received by defendants. Counsel also challenged orally the jurisdiction of the district court and plaintiff's standing to sue. At the conclusion of the hearing, Judge Aspen ordered the Secretary to re-submit the Ghantous application to Network 15.[4] On June 17, 1980, defendants filed their motions to dismiss for lack of subject matter jurisdiction, lack of standing, and failure to state a claim. On August 18, plaintiff moved for leave to file an amended complaint. The amended complaint asserts as an additional jurisdictional ground the Mandamus Act, 28 U.S.C. § 1361, and seeks to enjoin the Secretary from making Medicare reimbursement payments to the Ghantous facility. On August 22, Judge Aspen entered a memorandum opinion and order dismissing the complaint and denying leave to file the amended complaint on the ground that none of the jurisdictional provisions alleged, including 28 U.S.C. § 1361, conferrred subject matter jurisdiction on the district court. Plaintiff appeals, contending that jurisdiction lies under both 28 U.S.C. § 1331 and 28 U.S.C. § 1361. Because we find that plaintiff failed to state a claim upon which relief can be granted, it is unnecessary to consider the question of subject matter jurisdiction.
 
 III
 
 8
 As plaintiff recognizes (Br. 19), neither the Social Security Act nor regulations promulgated pursuant thereto give an ESRD facility the right to challenge the Secretary's approval of another facility under the ESRD program.[5] Nor is such a right conferred on plaintiff by the Administrative Procedure Act (APA), 5 U.S.C. §§ 701, 702.
 
 
 9
 In order to assert a cognizable claim or "standing to sue" under the APA, a plaintiff must demonstrate that it has suffered or will suffer "injury in fact" sufficient to establish Article III standing and that the alleged injury is to an interest "arguably within the zone of interests protected or regulated" by the statute that has allegedly been violated. United States v. SCRAP, 412 U.S. 669, 686, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254. Assuming that plaintiff's claimed potential loss of patients is sufficient to constitute "injury in fact," it is not an injury to an interest intended to be protected by the ESRD Program. The stated objectives and obvious purposes of the program are to provide needed treatment to persons suffering from chronic renal disease and to do so as efficiently as possible. While individual health care suppliers are undoubtedly beneficiaries of the program, these benefits are "wholly incidental to the purpose and design of the program." Geriatrics v. Harris, 640 F.2d 262, 265 (10th Cir. 1980); Northlake Community Hospital v. The United States of America, 654 F.2d 1234 at 1242 (7th Cir. 1981); see also Town Court Nursing Center v. Beal, 586 F.2d 266, 277 (3d Cir. 1978).
 
 
 10
 Moreover, recourse to the APA is unavailable where Congress intends to insulate the action complained of from judicial review. 5 U.S.C. § 701. That Congress so intended in this instance is manifest from the second sentence of 42 U.S.C. § 405(h),[6] which provides:
 
 
 11
 "No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided."
 
 
 12
 Thus plaintiff's original complaint fails to state a cognizable statutory cause of action.
 
 
 13
 Plaintiff's asserted constitutional claims are also deficient. At bottom, plaintiff's argument is that its business investment was made in reliance on the expectation that the Secretary would approve additional ESRD facilities only on a showing of need for services, thereby insulating plaintiff from competition for patients, and that this expectation gives rise to a due process right to challenge the Secretary's approval of competing facilities. However, plaintiff concedes that there is no contractual basis, express or implied, for its expectation (Br. 28, 31) and, as we have already noted, the statute manifests no Congressional intent to protect the financial interests of health care providers. Moreover, plaintiff plainly has no justifiable expectation or protectible property interest in the continued treatment of specific federally qualified patients, who are free under the ESRD Program to seek treatment at any approved facility regardless of its location. Mid Atlantic Nephrology Center, Ltd. v. Califano, 433 F.Supp. 23, 37 (D.Md.1977).[7] Plaintiff's reliance on cases recognizing a medical provider's protectible interest in its federal provider number is misplaced because there is no allegation that the Secretary has threatened to terminate plaintiff's participation in the ESRD Program. Plaintiff's suggestion that its interest in retaining its federal provider number gives rise to a constitutional right to intervene against agency action indirectly adverse to its financial interests is without merit. As the Supreme Court recently reiterated in O'Bannon v. Town Court Nursing Center, 447 U.S. 773, 789, 100 S.Ct. 2467, 2477, 65 L.Ed.2d 506 "the due process provision of the Fifth Amendment does not apply to the indirect adverse effects of governmental action."
 
 
 14
 Finally, it was not improper for the district court to deny plaintiff leave to file its amended complaint. In the amended complaint, plaintiff asserted mandamus jurisdiction and sought to compel the Secretary to resubmit the Ghantous application to Network 15 and relevant state health agencies and to make a determination of need for an ESRD facility at 4848 W. Belmont Avenue in Chicago. As a preliminary matter, we note that these claims appear in part to be moot by virtue of the Secretary's compliance with Judge Aspen's April 9, 1980, order to submit the Ghantous application to Network 15 (note 4 supra ) and by plaintiff's own allegation that the Illinois Department of Public Health licensed that facility on February 8, 1980.[8] However, even assuming that the issues are not moot, plaintiff has not stated a colorable claim to mandamus relief.
 
 
 15
 Mandamus relief is appropriate only where "there is a clear right in the plaintiff to the relief sought, a plainly defined and peremptory duty on the part of the defendant to do the act in question, and no other adequate remedy available." Trinity Memorial Hospital v. Associated Hospital Service, 570 F.2d 660, 666 n. 9 (7th Cir. 1977). Plaintiff cites no statutory provision or agency regulation that creates a clear duty on the part of the Secretary to submit ESRD facility applications for comment by Network 15 or state health agencies (which must independently approve the facilities for operation under state law). As previously noted, the statute provides only that the Secretary shall take into account the goals and recommendations of network organizations "as reflected in the network's annual report" (42 U.S.C. § 1395rr(c)(4)). 42 C.F.R. § 405.1912(a), on which plaintiff principally relies, states only that "data furnished by the network organizations * * * shall be considered by the Secretary * * * " (emphasis added). The fact that HHS may as a matter of practice submit applications for comment by network organizations, as it did in this case, is not sufficient to create a "plainly defined and peremptory duty" to do so, much less a clear duty to solicit new comments each time an applicant supplies new information. Moreover, even if such a duty could be inferred, it would not be owed to plaintiff. Similarly, whatever duties the Secretary has with respect to investigating the eligibility of ESRD applicants, they are not duties owed to plaintiff. Mid Atlantic Nephrology Center, supra, 433 F.Supp. at 33.
 
 
 16
 Since, for the foregoing reasons, neither the original nor amended complaint stated a claim upon which relief could be granted, the district court's order dismissing the complaint and denying leave to file the amended complaint is affirmed.
 
 
 
 *
 We have substituted the name Richard S. Schweiker, the successor to the original defendant, Patricia R. Harris, as Secretary of Health and Human Services pursuant to Fed.R.App.P. 43(c)
 
 
 **
 Senior District Judge
 
 
 **
 The Honorable Walter E. Hoffman, Senior District Judge of the Eastern District of Virginia, is sitting by designation
 
 
 [1]
 Act of October 30, 1972, P.L. 92-603, Title II, § 299I, 86 Stat. 1463, 42 U.S.C. § 426(e-g) (Supp. IV, 1974), amending 42 U.S.C. § 426 (1970)
 
 
 [2]
 Unless extended, advance approvals expire if services are not provided within six months
 
 
 [3]
 Plaintiff also sought "such other and further relief as (the) Court may deem just and proper, including without limitation, the award of money damages and Court costs." Plaintiff now appears to concede, however, that money damages are barred by the doctrine of sovereign immunity (Br. 33-34)
 
 
 [4]
 The record indicates that the Secretary complied with this order. Network 15 did not intervene in this suit, and there is no allegation that it opposes approval of the Ghantous facility
 
 
 [5]
 There is no statutory provision for review of the Secretary's determinations with respect to the eligibility of an ESRD facility for Medicare reimbursement, while the regulations afford review only to applicants denied approval (42 C.F.R. § 405.1501(c))
 
 
 [6]
 42 U.S.C. § 405(h), a provision of Title II of the Social Security Act, is incorporated into the Medicare Act, which includes the ESRD Program, by 42 U.S.C. § 1395ii
 
 
 [7]
 In Mid Atlantic Nephrology Center, on which plaintiff relies, the court found that plaintiff had standing under the APA to challenge the Secretary's approval of a competing dialysis facility and that jurisdiction over the claim under 28 U.S.C. § 1331 was not barred by 42 U.S.C. § 405(h). For the reasons discussed in the text, we are persuaded that the court erred in finding standing to sue under the APA
 
 
 [8]
 Moreover, the Illinois Department of Public Health is contractually bound to inspect ESRD facilities to insure compliance with the conditions of eligibility for participation in Medicare's ESRD Program, so that the state certification of the Ghantous facility indicates that the facility was meeting its minimal utilization requirements. Since there is no allegation in either the original or amended complaint or in plaintiff's briefs that plaintiff is not also meeting its minimal utilization requirements, there would appear as a factual matter to be need for the Ghantous facility's services